[S. F. No. 4375. In Bank.—October 9, 1905.]

## RALPH C. HARRISON, Petitioner, v. E. P. COLGAN, Controller of State, Respondent.

SALARIES OF JUSTICES OF DISTRICT COURTS OF APPEAL—CONSTITUTIONAL LAW.—Under the constitutional provision that the salaries of the justices of the district courts of appeal shall be the same as those of justices of the supreme court, and the constitutional prohibition against the increase or diminution of the compensation of justices of the supreme court after their election, the salaries of the justices of the district courts of appeal are limited to six thousand dollars per annum, that being the limit of the existing salaries of the justices of the supreme court.

ID.—LAW FOR INCREASE OF SALARY IN ABEYANCE.—The law providing for an increase of salary of the justices of the supreme court to the sum of eight thousand dollars per annum, though an existing statute, is not in force, because there is no subject upon which it can constitutionally operate. It remains in abeyance, and must so remain until the beginning of the next regular term of the office of justice of the supreme court.

ID.—BEGINNING OF PRELIMINARY TERM OF JUSTICES OF DISTRICT COURTS OF APPEAL.—The preliminary term of office of justice of the district court of appeal began to run as soon as that office was created by the adoption of the amendment of 1904 to the constitution, and vacancies in the office were at once created which might be filled at any time by appointment. Neither the existence of the office nor the running of the term depended upon the appointment of an occupant.

ID. — AMENDED LAW INCREASING SALARY INAPPLICABLE. — The amended law increasing the salary of the justices of the supreme court to eight thousand dollars, not being in force until after the appointment of the justices of the district courts of appeal, cannot be applicable to their salaries, whether their term begins from the passage of the constitutional amendment under which they hold their offices or from the date of their appointment. In either case their compensation could not be increased during their term.

PETITION in Supreme Court for Writ of Mandate against E. P. Colgan, Controller of State.

The facts are stated in the opinion of the court.

Charles W. Slack, for Petitioner.

U. S. Webb, Attorney-General, for Respondent.

SHAW, J.—This is an original proceeding in this court to compel the state controller to issue a warrant on the state treasury in favor of the plaintiff for his salary as justice of the district court of appeal of the second district for the month of June, 1905. The plaintiff demanded compensation for that month at the rate of eight thousand dollars a year, which the defendant refused. The proceeding is really begun on behalf of all the present justices of the district courts of appeal for the purpose of obtaining a determination of the question whether the annual salary of the incumbents of that office, after the taking effect of the act of March 18, 1905, and prior to the first Monday after the first day of January, 1907, is eight thousand dollars or six thousand dollars.

The amendments to article VI of the constitution, adopted at the general election on November 8, 1904, (Stats. 1905, p. xxxiv,) established three new courts styled district courts of appeal, and provided that there should be three justices of each of said courts. It further provided that "their terms of office and salaries shall be the same as those of justices of the supreme court," and that, "Upon the ratification by the people of this amendment, the governor shall appoint nine persons to serve as justices of the district courts of appeal until the first Monday after the first day of January in the year 1907. . . . At the election in the year 1906 nine of such justices shall be elected"—and that the justices so elected for each district should classify themselves, so that one should go out of office in four years, one in eight, and one in twelve years from January, 1907. At the time this amendment was adopted the law provided that "the annual salary of each justice of the supreme court is six thousand dollars." (Pol. Code, sec. 736, enacted March 12, 1872, and in force by virtue of section 11 of article XXII of the constitution of 1879, continuing in force "All laws relating to the present judicial system of the state.") The constitution also then contained a provision in section 17 of article VI, which was continued and made also applicable to the justices of the district courts of appeal by the amendment, that the compensation of the justices of the supreme court "shall not be increased or diminished after their election, nor during the term for which

they shall have been elected." The governor delayed making the appointments of justices of the district courts of appeal until April 10, 1905, at which time he appointed nine persons to those offices, including the plaintiff, and each of them immediately qualified and have ever since been acting as such justices. The act of March 18, 1905, under which, in connection with the provision of the constitution first above quoted, the plaintiff claims the increased salary, is as follows:

"Sec. 1. Section seven hundred and thirty-six of the Political Code of the state of California is hereby amended so as to read as follows: 736. The annual salary of each justice of the supreme court is eight thousand dollars; and the annual salary of each justice of the several district courts of appeal is seven thousand dollars." (Stats. 1905, p. 224, c. 249.) The act contained no emergency clause, and hence, under section 323 of the Political Code, it did not take effect as law until May 17, 1905, sixty days after its passage. Of the terms of the seven justices of the supreme court in office at the time of the ratification of the constitutional amendment in question, two will expire in January, 1907, two in January, 1911, and three in January, 1915. The foregoing are the principal constitutional and statutory provisions affecting the question for consideration.

The contention of the plaintiff is that the latter clause of the amended section (section 736 of the Political Code), fixing the salaries of the justices of the district courts of appeal at seven thousand dollars, is in conflict with the provision of the constitutional amendment of 1904, to the effect that the salaries of those justices shall be "the same" as those of the supreme court justices, and is therefore void, and the only effective part of the section is the provision fixing the salaries of the justices of the supreme court at eight thousand dollars; that this increase of the salaries of justices of the supreme court, by virtue of the last-mentioned constitutional provision, also acts upon the salaries of the justices of the district courts of appeal, and gives a like increase to them; that the terms of the latter justices did not begin to run until the date of their appointment, April 10, 1905; that at that time the amended section 736 aforesaid had been passed by both houses of the legislature and approved by the gov-

ernor, and nothing remained to make it effective as law, except
the lapse of the required sixty days from the time of its
approval; that under these circumstances the salaries of the
justices of the district courts of appeal must be deemed to
have been increased before the term for which they were
appointed had begun, and before their appointment, and not
during such term or after such appointment; and that the
law, so construed, does not transgress the constitutional restric-
tion upon an increase of salaries, and it therefore became
applicable to the newly appointed justices as soon as it took
effect, although the latter event happened after the terms
began.

1. Under the constitutional prohibition of any increase in
the salaries of justices of the supreme court after their election
or during the term, it is impossible for the legislature to
increase the salary of any justice of that court until January,
1907. Such salary could, of course, be changed at any time
by means of a constitutional amendment. Such an amendment
is to be submitted for adoption at the general election in
1906. But even if adopted, it does not purport to affect
salaries which become due in the mean time, and in any event
it does not affect the present question. The salary of each
justice is, and without such amendment will continue to be
during his present term, six thousand dollars a year. The
amendment, if adopted, will change it for the time elapsing
after its adoption, but not before. What, then, are the
salaries of the justices of the supreme court to which those
of the district court justices must for the present conform?
Clearly not the salaries which may hereafter be payable under
the amended statute when a new term of some of the justices
of the supreme court shall have begun, but the present salaries
now allowed and paid to them by law. The justices of the
district courts can, upon their own theory, claim nothing
under the provision expressly made for them by the amending
statute, but only by virtue of the clause which acts directly
upon the office of justice of the supreme court. The purpose
of the constitutional provision that the salaries of the justices
of the respective courts should be the same was, presumably,
to preserve a similar standard of capacity in the two courts.
It could not have been intended that a law raising the salaries
of justices of the supreme court, but inoperative as to present

justices, owing to the prohibition of an increase during their terms, should nevertheless be operative, in the mean time, upon the justices of the district courts of appeal, who are not referred to therein, and who can take only under the provision operative upon the justices of the supreme court who may be hereafter elected. The effect of the statute upon the justices of the district courts of appeal being secondary only, and dependent on its first having some actual application to some, at least, of the justices of the supreme court, it must for the time being be held inoperative upon all alike. It must be taken in connection with the constitutional limitations upon such legislation, and the two must be harmonized, if possible. So far as, by its language, it would appear to apply to existing terms and present incumbents, it is unconstitutional and void. To make the two harmonious, and give the statute some effect, it must be read as if it declared that ''the annual salary of each justice of the supreme court hereafter elected to a regular term shall be eight thousand dollars.'' The amended section, applying in terms to the supreme court justices, although an existing statute, is not in force, because there is no subject upon which it can constitutionally operate. It remains in abeyance, and must so remain until the beginning of the next ensuing regular term of the office of justice of the supreme court. In the mean time the only effective law fixing the salaries of justices of the supreme court is the original section 736 of the Political Code, fixing them at six thousand dollars a year, and to this the justices of the district courts of appeal must in the mean time conform, in order that their salaries shall be the same as those of the justices of the supreme court.

2. We are further of the opinion that the preliminary term of the office of justice of the district court of appeal began to run as soon as that office was created by the adoption of the amendment of 1904 to the constitution. Immediately upon the taking effect of the amendment, and without any regard whatever to the appointment of any person as justice thereof, the district courts of appeal became existing courts to which appeals could be taken, and the offices of justices thereof became existing offices to which persons could be appointed. A preliminary term extending to January 7, 1907, immediately began to run, and vacancies in the offices were at once created.

These vacancies might have been filled at any time thereafter by the appointment of persons to hold the respective offices for the unexpired part of the preliminary terms then running. There would have been no serious contention that this preliminary period did not constitute a term, if a time had been expressly mentioned for it to begin, or if it had been designated as a "term" in the amendment. The effect, however, is the same. The office began to exist at a time fixed, namely, upon the ratification of the amendment; the end of the time of service of the first appointees was fixed; and this constituted a "term" in fact as effectually as if it had been called by that name. If we should concede that the increase could apply to the justices of the district courts before it became applicable to any justice of the supreme court, and should then hold, as here contended, that the term did not begin to run until there was an appointee, it would follow that the conditions would have been such that the governor could have so arranged the time of making the several appointments, with respect to the passage of the act, that some of the justices would be entitled to the increased salary and others would not, or, by an early appointment, could have prevented any of them from receiving it, or, by deferring all appointments until after May 17th, could have secured it to all of them. And this possibility might have induced some concert of action between him and the members of the legislature, and the attempt to exercise improper influences by expectant candidates for the offices. We are far from supposing that such things would or could have been done or attempted by any of the persons concerned. But restrictions of this character are made with a view to preventing such conduct under any possible administration, or circumstances, and must be construed accordingly. It is only with respect to the effect upon the proper construction of the provision that we mention these possibilities. They furnish as weighty reasons for the application of the restriction to the preliminary term, and for holding that that term began with the office, rather than with the appointment of an incumbent thereto, as those assigned for the application thereof to the regular terms. In *State* v. *Parker*, 30 La. Ann. 1183, in considering a statute creating an office with a regular term to be filled by appointment, but not fixing the time of its

commencement, the court says: "The 'office' commenced its existence on the 5th of March, 1870, and in the absence of provisions to the contrary, as an incident thereto, 'the term' commenced at the same time that the office did. There is no more reason for saying that the commencement of the term was suspended until there was an appointee than there is for saying that the existence or commencement of the office itself was suspended. Neither the existence of the office nor the running of the term depended upon the appointment of an occupant." The justices were appointed to serve for the unexpired part of the preliminary term for which they were appointed. It is a settled rule regarding such restrictions that they forbid any increase during a term, regardless of the fact that different persons may successively hold for successive parts of the term, so that one who is elected or appointed after a part of such term has expired cannot have an increase made after the term began, though prior to his election or appointment. (*Larew* v. *Newman,* 81 Cal. 590 [23 Pac. 227]; *Storke* v. *Goux,* 129 Cal. 526 [62 Pac. 68].) The effect is that no justice of the district court of appeal serving any part of the preliminary term is entitled to more than six thousand dollars a year, no matter when the first appointment for such term was made. In *Brodie* v. *Campbell,* 17 Cal. 18, a case where the law creating the office of district judge fixed a preliminary term to be filled by appointment, to be followed by a regular term of six years, but fixed no time for the beginning of the regular term nor for the ending of the preliminary term, except by the rather indefinite provision that the first appointee should hold "till the next general election, when a judge shall be elected by the qualified voters of the district," it was held that the term of the first appointee ended, and that of the duly elected successor began, on the day when the successor qualified as such. The case was decided upon the peculiar language of the act, and we do not think it applicable to the point we are now considering.

3. If, however, it is conceded that the respective terms of the respective justices of the district courts of appeal ending in January, 1907, did not begin until they were respectively appointed, we are nevertheless of the opinion that the amended section 736 of the Political Code does not affect

their salaries during that term. The decisions are uniform in this state that, until the time arrives when it is to take effect and be in force, a statute which has been passed by both houses of the legislature and approved by the governor has no force whatever for any purpose, and all acts purporting to have been done under it prior to that time are void. (*People* v. *Johnston*, 6 Cal. 674; *Miller* v. *Kister*, 68 Cal. 145 [8 Pac. 813]; *Santa Cruz W. Co.* v. *Kron*, 74 Cal. 223 [15 Pac. 772].) The amended section 736, increasing the salaries of justices of the supreme court, did not become law or have any effect until May 17, 1905. It is admitted that prior to that time the respective justices of the district courts of appeal received and were entitled to a salary at the rate of only six thousand dollars a year. To allow them a salary of eight thousand dollars a year from and after that time would be to increase their salary during the term for which they were appointed, and by a statute which did not become law until after that term began. It is said in support of the plaintiff's theory on this point that the purpose of the constitutional inhibition was solely to prevent the possibility of an officer using the power and influence of his official position to obtain an increase of compensation after his term begins, and that, as this could not be done where the steps necessary to the passage of such a law are complete before the term has begun, the prohibition should not be applied to such a statute. It cannot be truly said that this was the sole purpose of the prohibitory clause. We have seen that it would be possible for such an increase to be made by arrangement with the appointing power and the legislature, at the instance of candidates who have been assured of their appointments and for their benefit, and that this also furnishes a reason for the prohibition. It is true that, so far as this object is concerned, the restriction could easily have been evaded in the present instance, conceding that the term had not begun, by including in the statute a clause making it take effect immediately. The fact that this was not done, and that there was at least a reasonable expectation that the appointments would be made before the amendment to the code would be in force, raises a strong presumption that the legislature did not suppose that the act would affect the salaries of the appointees if there was no emergency clause, and did not desire that it

should. But in any event the constitution plainly forbids an increase during the term, and no exception is made in favor of a law passed before the term begins, but not in force until afterwards. We cannot hold it inapplicable to the present law merely for the reason that one of the grounds which may have induced its insertion in the constitution is not applicable to the present case, particularly where the other grounds would or might be peculiarly applicable. The provisions of our constitution are therein expressly declared to be mandatory and prohibitory. The case of *Stuhr* v. *Hoboken,* 47 N. J. L. 147, which holds the contrary with respect to a similar prohibition contained in a city charter, is not a very well-considered case, is not consistent with the decisions of this court above cited that a statute not in force is absolutely ineffective, and does not meet with our approval. There is nothing in section 16 of article IV of the constitution to the effect that an act of the legislature is of any force before the time when it is declared to be in force by the statute itself. That section merely declares what procedure is required for the enactment of a law, and does not attempt to specify the time when the bill thereby enacted shall pass to the state of an operative law.

The petition for a peremptory writ of mandate is denied.

Beatty, C. J., Lorigan, J., Van Dyke, J., and Henshaw, J., concurred.

ANGELLOTTI, J., concurring.—I concur in the judgment. While I am entirely satisfied that under the existing law no justice of the supreme court now in office can receive the increase of salary provided for by the amendment to section 736 of the Political Code during the term for which he was elected, and that consequently, until January, 1907, there can be no justice of said court who will actually receive more than six thousand dollars per annum, I am not satisfied that this fact alone would bar the present justices of the district courts of appeal from receiving the increased salary, if the act increasing the salary had gone into effect prior to their appointment, and prior to the commencement of the term for which they were appointed. If the amendment to section 736 of the Political Code is a valid enactment at all, it undoubtedly

fixes the legal salary of justices of this court at eight thousand
dollars per annum, and the mere fact that other provisions
preclude any present member of this court from receiving
the increase during his term does not make it any the less
true that eight thousand dollars is the salary fixed by law
for justices of the supreme court. The constitution provides
that the salaries of justices of the district courts of appeal
"shall be the same as those of justices of the supreme court,"
and it may well be contended that by virtue of this provision
any justice of the district court of appeal, elected or appointed
after the taking effect of the amendment, and whose term of
office commences after such taking effect, would be entitled
to receive the legal salary fixed thereby—in other words, that
such amendment acts equally and uniformly upon justices
of the supreme court and justices of the district courts of
appeal, and applies to all justices of either court who are
elected or appointed for a new term after the amendatory act
became a law. I am, however, fully satisfied that the term
for which the present justices of the district courts of appeal
were appointed commenced with the adoption of the constitu-
tional amendment, and therefore before the act increasing the
salaries was enacted by the legislature. The constitution pro-
hibiting an increase of salary during the term for which they
were appointed, legislation subsequent to the commencement
of the term could not affect them.

I am also satisfied that inasmuch as the law fixing the
salary did not take effect until after the justices were actually
appointed by the governor, it could not operate to affect
them. The salary fixed by law at the time of their appoint-
ment was only six thousand dollars, and this could not be
subsequently increased as to them, except by constitutional
amendment.

I concur in all that is said in the opinion as to these two
grounds, and therefore concur in the judgment denying the
petition for a writ of mandate.

McFARLAND, J., dissenting.—I dissent, and think that
petitioner is entitled to a salary of eight thousand dollars per
annum. My views on the subject are briefly these:—

The constitution provides that the salaries of justices of
the district courts of appeal "shall be the same as those of

justices of the supreme court," and by the act of March 18, 1905, it is enacted that "the annual salary of each justice of the supreme court is eight thousand dollars." There is no doubt, therefore, that the annual salary of justices of the supreme court as fixed by law is eight thousand dollars, leaving out of view for the present the proposition that certain individual justices may be precluded from receiving that amount on account of the provision that the salaries of justices "shall not be increased or diminished after their election nor during the term for which they shall have been elected." The whole law existing to-day touching the salaries of justices of the supreme court commenced with the adoption of the constitution of 1878. This constitution deals with the whole subject of the salaries of justices and judges of the new courts which it creates, and necessarily covers that whole subject; and, of course, statutes about the salaries of justices of former courts are no longer of any significance. As to the salaries of the judges of the new superior courts, its provision is that "until otherwise changed by the legislature the superior court judges shall receive an annual salary of three thousand dollars each." But the provision as to salaries of justices of the supreme court is materially different. It is that "during the term of the first judges elected under this constitution the annual salaries of the justices of the supreme court shall be six thousand dollars each." It does not provide that such salaries shall continue until otherwise provided by the legislature. It does not provide at all for salaries of justices who shall be elected after the first term. It leaves that for the legislature, whose duty it was to provide for the salaries of said future justices. The legislature, however, neglected that duty until March 18, 1905. And when, at the last-named date, the legislature did perform that duty by fixing the salary at eight thousand dollars, the salary was not thereby "increased." It simply for the first time fixed the salary, not by increasing an existing salary, for there was none, but by remedying the former neglect to fix any salary at all. The fact that from the time when the provision of the constitution as to the salaries of the first justices ceased, the state, without any law on the subject, paid the justices certain compensation, does not in any way affect the validity of the above views.

This subject would, of course, be a delicate one for the

justices of this court to handle if their salaries were involved; but the case at bar involves only the salaries of justices of the district courts of appeal. It may be noticed, however, that the opposite view would leave the salaries of the district appellate justices in confusion for many years, unless the people next year adopt a pending constitutional amendment. According to the prevailing opinion, those justices are not to receive the salary fixed generally by law as the salary of the justices of the supreme court, but only such salary as the latter justices are actually receiving under the provision against increasing salaries. Does that mean the salary which a majority of such justices are receiving, or the salary which any of them are receiving? In January, 1907, there will be two newly elected justices of the supreme court who will not be subject to the provision against increasing salaries, and they will undoubtedly be entitled to the eight-thousand-dollar salary. But at that time the other five members of this court will, under the rule announced, be entitled to only six thousand dollars; and at that time will the newly elected justices of the district courts of appeal be entitled to the eight thousand dollars received by two of the supreme court justices, or will they be deprived of the eight thousand dollars until 1911, when a majority of the supreme court justices will be entitled to receive the eight thousand dollars? In my opinion the constitution clearly intends that after the expiration of the term of the first justices of the supreme court the entire matter of their salaries shall rest with the legislature, subject only to the provision that after the legislature had once fixed the salary any increase which it should afterwards make should not affect those already in office during their terms.