[Civ. No. 573. Third Appellate District.—December 24, 1908.]

## W. S. KINGSBURY, Petitioner, v. A. B. NYE, Controller, etc., Respondent.

CONSTITUTIONAL LAW—EFFECT OF AMENDMENT—INCREASE OF SALARIES OF STATE OFFICERS DURING TERM—REPEAL OF PRIOR PROVISIONS.— The original provisions of section 19 of article V* of the constitution, fixing the salaries of state officers, and forbidding the increasing or diminishing thereof by the legislature during their official terms, cannot affect the power of the people to amend the same by the amendment adopted November 3, 1908, which went into effect immediately upon its adoption, and operated to repeal the prior provisions and to substitute new and increased salaries of incumbents, and new and future restrictions upon the power of the legislature relative to the increased salaries.

ID.—EVIDENCE OF RATIFICATION OF AMENDMENT—CERTIFICATE OF SECRETARY OF STATE.—The certificate of the Secretary of State showing the adoption of the amendment is conclusive of the fact that the same was duly ratified.

ID.—CHANGE OF SALARIES.—Salaries may be changed at any time by a constitutional amendment, though not by the legislature.

ID.—TIME OF OPERATION OF AMENDMENT.—The amendment of November 3, 1908, to section 19 of article V of the constitution is in no sense retroactive in its operation; but it simply has force and effect from and after its ratification, and it operates prospectively thenceforward, and its operation is not to be postponed until the terms of the incumbents have expired.

ID.—MANDAMUS TO CONTROLLER.—*Mandamus* will lie to require the state controller to draw his warrant in favor of an incumbent of a state office for the increased salary provided for in the amendment to the constitution.

'APPLICATION for writ of mandate to the state controller.

The facts are stated in the opinion of the court.

White, Miller & Laughlin, for Petitioner.

R. T. McKissick, for Respondent.

CHIPMAN, P. J.—Mandate. The petition shows that at the general election held in this state on November 3, 1906, petitioner was duly elected to the office of surveyor general for the term of four years from and after the first Monday in January, 1907; that he duly qualified and thereupon became such officer, entered upon the discharge of his duties as such, ever since has been and now is the duly elected and qualified surveyor general, and now is entitled to receive the salary and emoluments of the said office; that at the regular session of the legislature commencing January 7, 1907, an amendment to section 19 of article V of the constitution of this state was proposed by the Senate, and on March 14, 1907, [Stats. 1907, p. 1364], a resolution entitled ''Chapter thirty-seven. Senate Constitutional Amendment number fourteen, a resolution to propose to the people of the State of California, an amendment to the Constitution . . . amending section nineteen of Article five of said constitution, relating to the compensation of state officers,'' was duly passed by both houses, which said proposed amendment was in words and figures following:

''Section 19. The Governor, Lieutenant-Governor, Secretary of State, Controller, Treasurer, Attorney-General, and Surveyor-General shall at stated times during their continuance in office, receive for their services, a compensation which shall not be increased or diminished during the term for which they shall have been elected, which compensation is hereby fixed for the following officers, as follows: Governor, ten thousand dollars per annum; lieutenant-governor, four thousand dollars; the secretary of state, controller, treasurer, and surveyor-general, five thousand dollars each per annum, and the attorney-general six thousand dollars per annum, such compensation to be in full for all services by them respectively rendered in any official capacity or employment whatsoever,

during their respective terms of office; provided, however, that the legislature may, by law, diminish the compensation of any or all of such officers, but in no case shall have the power to increase the same above the sums hereby fixed by this constitution. No salary shall be authorized by law for clerical services in any office provided for in this article, exceeding eighteen hundred dollars per annum for each clerk, employed. The legislature may, in its discretion, abolish the office of surveyor-general; and none of the officers hereinbefore named shall receive for their own use any fees or perquisites for the performance of any official duty.''

The petition then sets forth the various steps taken in certifying said proposed amendment by the Secretary of State, the publication thereof, and the necessary legal proceedings by which the said proposed amendment was submitted to a vote of the electors of the state, on the third day of November, 1908, and shows that the said proposed amendment received 92,558 votes in favor thereof and 92,556 votes against the same; also states with much detail the subsequent proceedings by which, under the provisions of law, the vote was duly canvassed and return of the result made by the Secretary of State, and by him duly certified and transmitted to the governor of the state, which said certificate was duly filed in the office of the governor and Secretary of State, on December 12, 1908, and that ''said certificate showed upon the face of the comparison, an estimate of the votes cast in said State of California, at said general election on November 3, 1908, that 92,558 votes had been cast in the State of California, at said election for the approval and ratification of said proposed Constitutional Amendment No. 14, and that 92,556 votes had been cast . . . against the approval and ratification of such proposed constitutional amendment No. 14.'' It is then set forth that by virtue of said amendment petitioner became entitled to receive as salary the sum of 416.66/100 dollars per month from and after the said third day of November, 1908; that on December 14, 1908, petitioner demanded of respondent that he draw his warrant on the state treasurer in favor of petitioner for the sum of $149.99, being the unpaid balance due petitioner for the month of November, 1908, calculated at the rate of $416.66 per month, but was refused by the said respondent.

The prayer is for a writ of mandate directed to respondent, as controller of the state, commanding him to forthwith issue to petitioner a warrant on said treasurer for said sum of $149.99.

Respondent interposed a general demurrer to the petition which admits the truth of the averments in the petition and raises the sole question, namely: Does the amendment of the constitution, as adopted November 3, 1908, operate to increase the salary of the present incumbent of the office held by petitioner, or is its operation to commence at the expiration of the present term of that office? The certificate of the Secretary of State is conclusive of the fact that the amendment was duly ratified. (*County of Yolo* v. *Colgan,* 132 Cal. 265, [84 Am. St. Rep. 41, 64 Pac. 403].)

In support of the demurrer respondent relies upon certain rules of construction which are not controverted. The contention of petitioner is that they do not lead to the conclusion claimed for them. The principal points upon which respondent rests his contention may be thus summarized: That section 19, article V of the constitution, since its adoption in 1879, contained precisely the same prohibition against increasing or diminishing salaries as that which is found in the amendment, and that under established rules of construction the prohibitory clause referred to is not to be regarded as having been repealed and re-enacted in the present form, "but the portions which were not altered are to be considered as having been the law from the time they were originally enacted and the new provisions are to be considered as enacted at the time of the amendment"; citing Political Code, section 325, and numerous cases illustrative of the rule; that this prohibitory clause has frequently been before the supreme court in cases where the legislature has directly or indirectly attempted to increase the salaries of officers then in office, and in every case the court has held such attempt to be invalid; citing many cases which so hold; that while these cases are examples of legislative action, the principle applies to the amendment in question, as the contention of petitioner if approved would lead to the violation of the previous policy of the people, which should not be allowed in the absence of proper language indicating such intention. "This," it is claimed, "is precisely the course which was adopted in con-

nection with the amendment to section 17, article VI, in relation to the compensation of justices of the supreme court and the district courts of appeal.'' It is further contended that the amendment must be given a prospective operation, and that to give it effect as urged by petitioner would make it necessarily retroactive "to the extent of increasing the salaries of the present incumbents for something more than one-half of their respective terms in express contravention to the provisions of the section as it stood before the ratification of the amendment and as it stood immediately subsequent thereto,'' and thus "the people are put in the inconsistent attitude of doing that which, by their fundamental law they expressly prohibited and at the same instant continue the prohibition in force." Resulting from these views it is contended that "the amendment must be deemed to have a prospective operation and to apply to the offices enumerated, upon the expiration of the terms of the present incumbents and not before."

Reference to the section of the constitution for which the amendment in question is substituted will show that the provisions are the same in both except as to the amount of the salaries fixed for the various officers, and except that the former section restricted its operation "for the two terms next ensuing the adoption of this constitution"—a provision whose force has departed by limitation of time. The amendment, therefore, must be held to absolutely repeal the old and substitute in its stead the new provision. It is beyond dispute that the amendment went into effect upon its adoption and ratification. Speaking of the amendment to fix the salaries of justices of the supreme court and of the district courts of appeal, then about to be submitted (Stats. 1905, p. 1069), the supreme court said, in *Harrison* v. *Colgan*, 148 Cal. 69, 72, [82 Pac. 674, 675] : "The salary of each justice is, and without such amendment will continue to be during his present term, six thousand dollars a year. The amendment, if adopted, will change it for the time elapsing after its adoption, but not before." The old provision ceases to have effect from the time the substituted provision commences to operate (*In re Oliverez*, 21 Cal. 415), and operates prospectively. (Cooley's Constitutional Limitations, 7th ed., p. 97.) Mr. Cooley says: "Where a constitution is revised or amended, the new provisions come into operation at the same moment that those that they take the place of cease to be of force;

and if the new instrument re-enacts in the same words provisions which it supersedes, it is a reasonable presumption that the purpose was not to change the law in these particulars, but to continue it in uninterrupted operation." "This," he says, "is the rule in the case of statutes, and it sometimes becomes important, where rights had accrued before the revision or amendment took place. Its application to the case of an amended or revised constitution would seem to be unquestionable." (Cooley's Constitutional Limitations, p. 96.) Conceding, as is claimed by respondent, that the provisions of section 19, article V, must be regarded "as the law all along," it ceased to be the law upon the adoption of the amendment. The utmost that can be claimed is that the clause "shall receive for their services a compensation which shall not be increased or diminished during the term for which they shall have been elected," is to be given the same construction as should have been given the same clause in the old law had the question arisen under it. But the former provision was by express words made applicable "for the two terms next ensuing the adoption of this constitution," so that there was left no room for construction as to when the provision took effect in any wise different from that which must be given to the amendment.

Let us consider for a moment, if we may, the probable reason or policy underlying the restriction as to increasing salaries of incumbents and what was probably in the minds of those proposing the restriction or voting for it. Was the principal reason, or was it a reason at all, that it was unwise or impolitic to so increase compensation under any circumstances, to incumbents, or was it not rather because it was thought unwise to leave the discretion with the legislature? The recent amendment increasing the salaries of the justices of the supreme court and making the increase applicable to the then incumbents is sufficient evidence that the people do not regard the increase to officers during their term as unwise. Many considerations might, however, be suggested why it would be unwise to intrust this discretion to the legislature in respect of the officers created by the constitution, and why the people reserve to themselves that power. In the instances now before us, involving the salaries of the most important officers connected with the executive department, no reason can be suggested, growing out of the character of

the office or the duties to be performed, why the increase should not take immediate effect. Indeed, every reason for increasing the salaries at all applies with full force to the incumbents.

The policy has been, we think, not that salaries may not be increased during the term of the incumbent, but that the legislature shall not exercise the power.

When section 17, article VI, relating to the salaries of judicial officers was in 1905 proposed and later adopted (Stats. 1905, p. 1069), that section of the constitution provided that the compensation there fixed for the officers named "shall not be increased or diminished during the term for which they shall have been elected." The amendment provided also that "the salaries of the judges of the superior court, in all counties having but one judge, and in all counties in which the terms of the judges of the superior court expire at the same time, shall not hereafter be increased or diminished after their election, nor during the term for which they shall have been elected. Upon the adoption of this amendment the salaries then established by law shall be paid uniformly to the justices and judges then in office." As to the justices of the supreme court and district courts of appeal, their salaries were definitely fixed at stated amounts to take effect on and after January 1, 1907. Notwithstanding the inhibition of section 17, article V, of the constitution, the justices then in office, whose terms expired on the first Monday after the first day of January, 1907, were paid the additional compensation, to January 7th.

In the proposed amendment the legislature stated in a whereas, as among the reasons for proposing the amendment, that it was "impracticable to change the salaries of the justices and judges of the same court, where the terms expire at different times, under the present restriction that such salary shall not be increased or diminished during the term for which they were elected."

Why was it impracticable? Not because the power did not rest in the people to do the very thing desired, but because the legislature could not do it.

That the people, by the amendment in question to their constitution, had plenary power over the whole subject cannot for a moment be doubted. The people had taken from the legislature the power to increase or diminish the salaries dur-

ing the term of the office, but they never surrendered the power that resided in themselves, nor could the people who adopted the constitution of 1879 limit the power of the people afterward to alter or amend that constitution. The court said in *Harrison* v. *Colgan,* 148 Cal. 69, 72, [82 Pac. 674, 675] : "Such salary could, of course, be changed at any time by means of a constitutional amendment."

The amendment under review having gone into operation from the date of its adoption, it must be given effect thence-forward, unless we can say that some restriction has been put upon its operation, either by the terms of the amendment or by implication derived from the terms so used. We can find nothing in any of the terms, and nothing is claimed to be found therein, except the provision as to the increase or diminution of the compensation, which we hold was addressed to the legislature alone. Had such intention dwelt in the minds of the proponents of the amendment, it would have been easy and simple to restrict its effect and withhold its benefits from present incumbents.

Under our system of government the power residing in the people is, for convenience of exercise, confided to three co-ordinate departments. With only one of these—the legisla-tive—are we concerned. Within its sphere of action it is omnipotent, save only as its power is restricted by the con-stitution. This body of organic law, called the constitution, is framed for the guidance of the various persons or bodies by it designated to carry out the details of the government estab-lished by the constitution; and its provisions are intended to either compel or prohibit the performance of enumerated acts by the agents of the people who, for the time being, are chosen to administer the functions of government. When, therefore, we find a limitation or restriction of legislative power, it is directed to the legislature and not to the people, the source of all power. The restrictive provision in question is to be interpreted as though it read: The legislature shall not increase or diminish the compensation of the officers named during the term of their office. And it will be observed that, subject to this limitation, the section provides that the legislature may decrease the compensation, showing, we think, that the proponents of the amendment were addressing them-selves to the legislature alone.

Section 19, article V, as it stood in the constitution of 1879, provided, as we have seen, that the salaries therein mentioned should not be interfered with for two terms of the officers referred to therein. Can it be doubted that the people might have withdrawn that provision by amendment of the constitution and committed the entire subject of compensation to the legislature? If there was no restriction placed upon the legislature no one would question its power to increase or diminish the compensation of officers created by the constitution, during their term of office. This results from the power residing in the legislature as the depositary of the power of the people, and, it seems to us, further shows that the section under examination is addressed alone to the legislature.

"The object of construction," says Judge Cooley, "as applied to a written constitution, is to give effect to the intent of the people in adopting it. In the case of all written laws, it is the intent of the law-giver that is to be enforced. But this intent is to be found in the instrument itself. It is to be presumed that language has been employed with sufficient precision to convey it, and unless examination demonstrates that the presumption does not hold good in the particular case, nothing will remain except to enforce it." (Cooley's Constitutional Limitations, p. 89.) A slight transposition of the language used in the amendment will assist in disclosing what indeed seems clear enough without such aid. We may read the amendment thus: The governor, and other officers named, shall receive for their services, at stated times during their continuance in office, a compensation as follows—stating the several salaries—"which shall not be increased or diminished during the term for which they shall have been elected," by the legislature, provided, however, that the legislature may diminish the compensation to take effect after the term shall have expired for which any such officer has been elected. The increase thus given could, under the construction contended for by respondent, be entirely nullified should the legislature at the coming session place the salaries back where they stood before. In such case neither the incumbents nor their successors could receive the increased compensation to which the people have said they were entitled. It is reasonable to presume that the people in voting the increase had in mind the present duties and responsibilities of these officers and intended to make suitable provision for their adequate

compensation. It is not reasonable to suppose that the people intended to fix the compensation and at the same time in-. tended to so fix it that it should not go into operation until · after the legislature had been given an opportunity to reduce it to the former amount. Rather it would seem reasonable to presume that the intention was to give immediate operation to the amendment, leaving with the legislature, after time had been given to test by experience the wisdom of the increase, the power to diminish the compensation.

The point made that the rule requiring that the amendment be given a prospective effect necessarily postpones its operation until after the present terms expire, and that any other view would be to give a retroactive effect to the amendment, we think, cannot be sustained. The amendment, as we apply it, is in no sense given a retroactive operation; it is simply given force from and after its ratification, and it operates prospectively thenceforward. If, as we have held, the amendment took effect upon its ratification, and operated, as respondent admits, prospectively, we know of no authority for holding that its operation must be postponed until the terms of the incumbents have expired.

It is ordered that a peremptory writ issue as prayed for. It is further ordered that, pursuant to stipulation of the parties made in open court, *remittitur* issue forthwith.

Hart, J., concurred.

BURNETT, J., Concurring.—I concur in the judgment and generally in the opinion of the presiding justice.

It seems to me there is no escape from the conclusion that the "compensation" which, it is provided, "shall not be increased or diminished during the term for which they shall have been elected," is the "compensation" fixed by the amendment. Grammatically, the amendment is substantially the same as though it provided: "The governor, lieutenant-governor, secretary of state, controller, treasurer, attorney-general and surveyor-general shall at stated times during their continuance in office receive for their services the following compensation: Governor, ten thousand dollars per annum; lieutenant-governor, four thousand dollars; the secretary of state, controller, treasurer and surveyor-general, five thousand dollars per annum, and the attorney-general six thousand

dollars per annum, which compensation shall not be increased or diminished during the term for which they shall have been elected.''

There is nothing whatever in the language used to indicate the intention of the people that the amendment should not take immediate effect, but, *ex industria,* they have specified that this increased compensation shall not be changed so as to affect the incumbents of these various offices. This restriction, of course, cannot limit the power of the people themselves to change at any time the compensation, though it may have been thought otherwise by those proposing the amendment and by those adopting it.

The application we have made of the expression ''which shall not be increased or diminished during the term for which they shall have been elected'' renders the amendment tautological, at least as far as ''increased'' is concerned, because it is subsequently provided that the legislature ''in no case shall have the power to increase the compensation above the sum fixed by the constitution.'' But this is not a sufficient reason for giving the amendment a construction which is directly opposed to the ordinary and perspicuous signification of the terms employed.

As the only question before us is as to the time when the amendment takes effect, and as there is nothing to indicate an intention on the part of the people to make inapplicable the general rule, I think the conclusion is inevitable that the writ should issue.