[Civ. No. 4415. Second Appellate District, Division One.—October 31, 1923.]

## W. A. SHAY, Sheriff, etc., Petitioner, v. VINCENT ROTH, Auditor, etc., Respondent.

[1] STATUTORY CONSTRUCTION—CONSTITUTIONAL PROVISIONS.—The provisions of the constitution are mandatory and prohibitory unless by express words they are declared to be otherwise, and are binding upon every department of the state government, legislative, executive and judicial.

[2] ID. — MEANING OF CONSTITUTIONAL PROVISIONS — It is the general rule that in construing the provisions of the constitution the words employed therein shall be given the meaning which they bear in ordinary use.

[3] ID. — CHARTERS — AMENDMENTS. — What may not be done in a charter as originally adopted may not be done in an amendment to the charter in the absence of constitutional authority for such enlarged power by amendment.

[4] CONSTITUTIONAL LAW—AMENDMENT TO COUNTY CHARTER—WHEN EFFECTIVE.—An amendment to a county charter increasing the salary of a sheriff ratified by the people of the county did not become a law until its approval by the legislature.

[5] ID. — INCREASE OF SALARY OF SHERIFF — AMENDMENT TO COUNTY CHARTER—APPLICABILITY OF SECTION 9, OF ARTICLE XI OF CONSTITUTION.—The provision of section 9 of article XI of the constitution that "The compensation of any county, city, town or municipal officer shall not be increased after his election or during his term of office," applies to an amendment of a county charter increasing the salary of sheriff, which charter is framed and adopted, and which amendment is ratified by the people of the county and approved by the legislature, pursuant to the provisions of section 7½ of article XI of the constitution.

[6] ID. — RATIFICATION AND APPROVAL OF CHARTER — CLASSIFICATION OF ACTION.—Although the action of the legislature in approving a charter is not a legislative one, the action of the county in ratifying the charter and of the legislature in approving it would classify the result as governmental action within the legislative department of the state government as defined by section 1 of article III of the constitution.

[7] ID.—STATUTORY CONSTRUCTION.—The court has no right, by construction, to substitute its idea of the intent of the law when that intent is unmistakably expressed in legislative words.

[8] ID.—SECTION 7½ OF ARTICLE XI OF CONSTITUTION—POWER CONFERRED BY—MANNER OF EXERCISE.—Section 7½ of article XI of

the constitution does not confer unrestricted special power in deal-ing with the subjects of sheriffs and their compensation, but the power conferred by the language of the section itself must be exercised in a manner consistent with and subject to the constitu-tion.

[9] Id. — Charter Amendment — Direct Repeal of Former Salary Provision—Effect of.—The fact that a charter amendment in-creasing the salary of a sheriff contains a direct repeal of the former salary provision does not deprive the sheriff of any salary whatever where the charter amendment violates section 9 of article XI of the constitution, but such officer is entitled to the salary in effect at the time of the election and the commencement of his term until the expiration of such term.

PROCEEDING in Mandamus to compel the auditor of San Bernardino County to issue warrant for salary of sheriff. Writ denied.

The facts are stated in the opinion of the court.

Swing & Wilson for Petitioner.

George K. Johnson, District Attorney, for Respondent.

SHENK, J., *pro tem.*—Application for writ of mandate to compel the respondent, as auditor of the county of San Ber-nardino, to issue a warrant on the county treasurer direct-ing the payment of the sum of three hundred dollars to peti-tioner as salary due him for the month of May, 1923, as sheriff of said county.

Petitioner was elected to the office of sheriff at the general election held November 7, 1922. His term of office com-menced on the eighth day of January, 1923. At the same general election of November 7, 1922, the people of the county of San Bernardino ratified a proposed amendment to the charter of said county. The amendment added two new sections to article II of the charter which read as follows:

"Section 5a. The salary of the sheriff shall be and is hereby fixed at thirty-six hundred dollars per annum.

"Section 5b. Section 5a hereof shall take effect and be in force and the salary fixed shall be effective from and after 12 o'clock noon on the 8th day of January, 1923. All

provisions of said Article II in said charter in conflict with the foregoing section are hereby repealed.''

The amendment so ratified was approved by the legislature on the twenty-ninth day of January, 1923. Prior to the amendment the salary attached to the office of sheriff as established by the charter of the county was two thousand four hundred dollars per annum.

It is the contention of the respondent that the charter amendment increasing the petitioner's salary did not take effect or become a law until January 29, 1923, a date subsequent to the election of petitioner and after the commencement of his term of office, and that the increase in salary did not and does not apply to him, because of the following provisions of section 9 of article XI of the constitution: ''The compensation of any county, city, town, or municipal officer shall not be increased after his election or during his term of office.''

The charter of the county is a freeholders' charter framed and adopted pursuant to the provisions of section 7½ of article XI of the constitution, and the foregoing amendment was ratified and approved in all respects as required by that section. It is the position of the petitioner that the prohibitions of said section 9 do not apply to the amendment to the charter so adopted, and this is the only question for determination.

[1] The provisions of the constitution are mandatory and prohibitory unless by express words they are declared to be otherwise (Const., art. I, sec. 22), and are binding upon every department of the state government, legislative, executive, and judicial. (*People* v. *California Fish Co.,* 166 Cal. 587 [138 Pac. 79].) It is said in *Oake* v. *City of Los Angeles,* 164 Cal. 709 [130 Pac. 725], that the declarations of the constitution ''are all mandatory and prohibitory unless the contrary is expressly declared.'' The section is plain and unambiguous. There is therefore no room for construction. The intent is to be found in the language itself. [2] It is the general rule that in construing the provisions of the constitution the words employed therein shall be given the meaning which they bear in ordinary use. (5 Cal. Jur. 595.) In *City of Pasadena* v. *Railroad Com.,* 183 Cal. 532 [10 A. L. R. 1425, 192 Pac. 28], it is said: ''The constitution, 'unlike the acts of the legislature, owes

its whole force and authority to its ratification by the people; and they judged of it by the meaning apparent on its face according to the general use of the words employed, where they do not appear to have been used in a legal or technical sense.' "   To the same effect see *Turlock Irr. Dist.* v. *White,* 186 Cal. 186 [17 A. L. R. 72, 198 Pac. 1060].   We find no words in section 9 which could be termed legal or technical and the prohibitions of the section must be enforced as written, unless it may properly be concluded that they have no application to a county charter or an amendment thereto, as urged by petitioner.

It is first contended that under section 7½ of article XI the power of the people of the county to amend a charter is unrestricted.   [3]   It is clear that what may not be done in the charter as originally adopted may not be done in an amendment to the charter in the absence of constitutional authority for such enlarged power by amendment.   No such enlarged power is found in the constitution.   The provisions of section 7½ must therefore be examined in order to determine their effect, if any, upon the prohibitions of section 9.

As to matters which must be included in the county charter and as to matters which in addition it is competent to include in such charter, section 7½ is definite and specific. So far as applicable to this proceeding, it provides as follows: "Any county may frame a charter for its own government consistent with and subject to the Constitution . . . and relating to matters authorized by provisions of the Constitution. . . . If a majority of said qualified electors (of the county), voting thereon . . . shall vote in favor of such proposed charter, it shall be deemed to be ratified, and shall be forthwith submitted to the legislature . . . for its approval or rejection as a whole, without power of alteration or amendment.   Such approval may be made by concurrent resolution, and if approved by a majority vote of the members elected to each house, such charter shall become the charter of such county and shall become the organic law thereof relative to the matters therein provided . . . The charter, so ratified, may be amended" with the same provisions for ratification by the electors of the county and approval by the legislature as is specified for the original charter.

[4] It will be noted that the section requires that the charter *shall* provide for sheriffs and for their compensation or for the fixing of their compensation by boards of supervisors. It will also be noted that the provisions of such charter *must be consistent with and subject to* and must relate to matters *authorized by* the constitution. That the provisions of the charter must be consistent with the constitution is recognized in *Jones* v. *De Shields,* 187 Cal. 335 [202 Pac. 137]. There is nothing in section 7½ which would authorize a violation of section 9 of the same article, nor is the amendment as applied to petitioner's claim consistent with that section. The phrase ''consistent with'' means ''in agreement with; harmonious with.'' The amendment must also be subject to section 9. The phrase ''subject to'' means ''subordinate to; obedient to.'' [5] The amendment did not become a law until its approval by the legislature on January 29, 1923. (See *Apple* v. *Zemansky,* 166 Cal. 83 [134 Pac. 1149]; *Snyder* v. *Murray,* 170 Cal. 656 [151 Pac. 128].) The increase in salary, if allowed, would become fixed by law both after the petitioner's election and after the commencement of his term of office, and would therefore constitute legislation as to him in a manner inconsistent with, not subordinate to, and, in fact, contrary to the provisions of said section 9.

It is contended that the inhibitions of section 9 apply to the legislature and not to the people. Reliance is placed on the case of *People* v. *Gunn,* 85 Cal. 238 [24 Pac. 718]', wherein it is stated that in approving a charter the legislature is not the lawmaker, but exercises a power similar to that delegated to the governor with reference to bills passed by the legislature, namely, that of approval or rejection. There is nothing in that case which would sanction a charter provision in violation of a constitutional mandate. [6] Although the action of the legislature in approving a charter is not a legislative one, the action of the county in ratifying the charter and of the legislature in approving it would classify the result as governmental action within the legislative department of the state government as defined by section 1 of article III of the constitution. The same declaration may be applied to a charter of a county as has been applied to the charter of a city adopted under section 8 of article XI of the constitution. In *Sheehan* v.

*Scott,* 145 Cal. 687 [79 Pac. 351], it is said: "The authority
to provide a municipal government for a city is referable
to the law-making power of the state, and the enactment
of a charter for a municipality is a legislative act." Such
a charter has for some purposes been declared to be a stat-
ute. (*Frick* v. *Los Angeles,* 115 Cal. 512 [47 Pac. 250].)

Petitioner relies upon the case of *Kingsbury* v. *Nye,* 9 Cal.
App. 574 [99 Pac. 985], wherein it is said with reference to
the effect of section 9 of article XI as applied to the facts
in that case: "The policy has been, we think, not that
salaries may not be increased during the term of the in-
cumbent, but that the legislature shall not exercise the
power . . . When, therefore, we find a limitation or re-
striction of legislative power, it is directed to the legislature
and not to the people, the source of all power." It is
therefore urged that the judicial declaration of that case
has the effect of removing the amendment to the charter
from the prohibitions of section 9. That case involved the
validity of an increase by constitutional amendment of the
salaries of certain incumbent state officers, and it was held,
in conformity with the views expressed in *Harrison* v. *Col-
gan,* 148 Cal. 69 [82 Pac. 674], that salaries could be
changed at any time by constitutional amendment. This
proposition is not disputed by respondent. When the lan-
guage of the Kingsbury case is viewed in the light of the
facts involved therein, it must be concluded that what was
meant to be adjudicated was no more than that the prohibi-
tions of section 9 do not apply to the people of the state—
the source of all power—when exercising that power by con-
stitutional amendment. Such language must also be held to
mean that the restrictions of section 9 are directed against
the exercise of legislative power as distinguished from power
exercised by the people of the state by constitutional amend-
ment. It certainly may not be properly urged that, because
the language of the Kingsbury case apparently limited the
prohibitions of section 9 in terms to "the legislature," it
was intended to construe the effect of the prohibitions of
section 9 so that the same would not apply to other bodies
subordinate to the constitution and exercising legislative
functions, such as boards of supervisors, city boards of
trustees and city councils, nor to exclude from the operation
of that section cities or counties legislating by initiative ordi-

nance or charter provisions by direct vote of the people. Furthermore, the court said in that case: "The organic law of the state is framed for the guidance of all persons and bodies subordinate to its will." In *Cameron* v. *City of Richmond*, 42 Cal. App. 262 [183 Pac. 604], it was held that section 9 prohibited the increase in salary of an incumbent city councilman of the charter city of Richmond.

Petitioner also cites *Puterbaugh* v. *Wadham*, 162 Cal. 611 [123 Pac. 804], to the effect that the prohibitions of section 9 of article XI are directed to the legislature, but likewise what is said in that case obviously was not intended to exclude from the operation of section 9 other governmental bodies legislating subject to constitutional restraint. In that case it was held that section 9 of article XI had no application to an automatic increase in official salary due to the passing of a city by increased population from one class to another. It was there said: "The salary of an officer that may not be increased 'during his term of office' has reference only to his compensation as fixed by law when his term of office began." The compensation claimed by the petitioner in that case was the salary as fixed by law at and prior to the commencement of his term of office.

In the case of *Gibson* v. *Civil Service Com.*, 27 Cal. App. 396 [150 Pac. 78], also relied upon by petitioner, it is said in referring to the adoption of said section $7\frac{1}{2}$: "The constitutional provision so adopted was comprehensive to the end that the counties should have the power to provide a complete system for the election and appointment of their officers and for the fixing of their compensation."

Such, no doubt, was the purpose of the section. And it may be assumed that the result has been accomplished so far as interference by general laws is concerned. But that broad general statement of the purposes of the section should not be held to sanction such a system for the control of county officers as would do violence to the provisions of the instrument under which the system was authorized.

There are no exceptions which may be read into the language of section 9 so as to exclude from its operation legislation by any subordinate body. In *People* v. *Campbell*, 138 Cal. 15 [70 Pac. 920], the supreme court said: "The constitution is to be interpreted by the language in which it is written, and courts are no more at liberty to add pro-

visions to what is therein declared in definite language than they are to disregard any of its express provisions." If counties acting in a legislative capacity in adopting a charter are not bound by the prohibitions of section 9, what is to prevent them from transcending any other provisions of the constitution? For instance, section 21 of article IV of the constitution provides that no person convicted of embezzlement or defalcation of public funds shall ever be eligible to any office of profit in this state. Could a county charter provide for a county treasurer and assuming to exercise complete control over the election and appointment of its county officers install and retain in the office of treasurer a person who had been convicted of embezzlement of public funds? Again, section 20, article IV, provides that no person holding any lucrative office under the United States shall be eligible to any civil office of profit under this state. Assuming, also, to exercise such complete control over its officers, could a county provide in its charter for the election of a sheriff and elect and retain in office one who at the same time held the office of United States marshal? And, again, section 2 of article XXII provides that any person who shall fight a duel shall not be eligible to hold any office of profit under the constitution. The reasons for this prohibition may not now be as apparent as in the olden days when such deadly personal combat was more in vogue. Even so, but may it be said that a county charter could provide for the election or appointment of a coroner or any other salaried official and install and retain in office one who was disqualified under that section?

We think the questions answer themselves. Reference to other sections of the constitution might be multiplied, but sufficient has been said to illustrate the point that a county is not wholly unrestricted in exercising control over its charter officers. It seems clear that under present law a county is not clothed with immunity from constitutional obedience, whether it act by charter adoption or amendment thereto. Whatever political autonomy a county may enjoy and whatever means it may employ in exercising self-government must be consistent with the grants and limitations of such powers prescribed by the organic law of the state.

It is contended that the reasons for the enactment of section 9 do not apply to an increase of salary accomplished

by a vote of the people of the county. In *Puterbaugh* v. *Wadham, supra,* also cited in support of this contention, it is declared that section 9 of article XI of the constitution "was designed to protect taxpayers from legislative interference with their rights by increasing the compensation paid to their elected officers without consent of the electorate," and it is argued that when the increase is accomplished by a vote of the electorate of the county there could be no such legislative interference. The reason indicated in that case for the adoption of the section is very apparent, but it cannot be said that such was the only reason. It may be that it was also designed generally to set at rest the question of compensation of public officers after their election in all subdivisions of the state when an increase might be sought by any method of legislative action. It was said in *Weill* v. *Kenfield,* 54 Cal. 111, with reference to the mandatory provisions of section 15 of article IV of the constitution: "But we are not permitted to consider the *policy* of a provision, when its language, as in the present instance, seems to us plain and positive. The whole of this line of argument is disposed of by the phrase, *'Ita lex scripta est.'* " Judge Cooley says in his work on Constitutional Limitations, seventh edition, at page 88: "A constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable." The same author says, at page 89: "The meaning of the constitution is fixed when it is adopted, and it is not different at any subsequent time when a court has occasion to pass upon it." **[7]** The court has no right, by construction, to substitute its idea of the intent of the law when that intent is unmistakably expressed in legislative words. (*Chenoweth* v. *Chambers,* 33 Cal. App. 111 [164 Pac. 428].)

It is further contended by the petitioner that section 7½ confers upon the county unrestricted power in fixing the compensation of the sheriff for the reason, so it is claimed, that section 9 prescribes a general rule applicable to officers of all counties and that in conflict therewith is the alleged special provision of section 7½ applicable only to officers of counties operating under a freeholders' charter. The familiar rule that a special provision controls an inconsistent general provision on the same subject is sought to be ap-

plied. We discover no inconsistency in the two sections and consequently find no place for the application of the rule. [8] Section 7½ does not confer unrestricted special power in dealing with the subjects of sheriffs and their compensation, but the power conferred by the language of the section itself must be exercised in a manner consistent with and subject to the constitution. There is no conflict when the two sections are read together. When so read and relating to the matter in controversy the two sections would mean: "Consistent with and subject to the prohibitions of section 9 of this article said charter shall provide for sheriffs and fix their compensation."

[9] It is suggested that because of the repealing clause in the charter amendment the sheriff must receive the increased compensation or be denied any and all compensation whatever. But this result cannot follow for two reasons: In the first place, it is the mandate of section 7½ that the compensation of the sheriff must be provided for either in the charter itself or by the board of supervisors in a manner to be indicated in the charter. The charter of San Bernardino County as now framed contains no provision for the fixing of the salary of the petitioner by the board of supervisors after the commencement of his term of office. It would therefore be contrary to the constitutional provision to so amend the charter as to deprive the sheriff of the county of all compensation. In the second place, it has been held that when an increase in salary is provided for contrary to the provisions of section 9 the law providing for the increase is held in abeyance until the incumbency of an officer upon whom the increase may constitutionally operate, and until such time the salary in effect at the time of the election and the commencement of the term of the officer as to whom the increase cannot apply shall be the salary fixed by law for him until the expiration of his term. (*Harrison* v. *Colgan,* 148 Cal. 73 [82 Pac. 674].)

The fact that there is an attempted direct repeal of the former salary provision in the charter amendment instead of an implied repeal usually applicable in such cases is of no moment. The result in either case is the same. The charter amendment deals with but one subject, to wit, the increase in salary of the sheriff, coupled with the express intent to have it supersede the former charter provision

on the same subject. The same intent is implied and is given equal effect when the increase in salary is provided for and the repeal is effected by implication. (See *Kingsbury* v. *Nye, supra.*)

There is no force in the suggestion that when section 9 of article XI was adopted legislation by subordinate governmental subdivisions by direct vote was not contemplated. The original constitution of 1879, in section 8 of article XI, provided for the adoption of a municipal charter by a vote of the people of the city and prescribed the same general plan as is now outlined for that purpose in the constitution, including the provision that the charter should be consistent with and subject to the constitution.

It is unnecessary to determine the effect of the provision of section 5b of the amendment where it is declared that the increased compensation shall be in effect on January 8, 1923, a date prior to the time the amendment became a law, for the reason that section 9 of article XI prohibits the increase after the election of the officer as well as after the commencement of his term. Assuming, but not deciding, that the increase in salary could be made retroactive and operative from and after January 8, 1923, still that date was more than two months after the election of petitioner and equally contrary to the constitutional provision.

It is therefore concluded that the petitioner is entitled only to the compensation fixed by the charter and in effect immediately prior to his election and that the increased compensation provided for by the amendment is not applicable to him.

The petition for a peremptory writ is denied.

Houser, J., concurred.

CONREY, P. J., Dissenting.—I dissent. The constitution, in article XI, section 7½, provides that the charter of a county when duly adopted and approved "shall become the organic law thereof relative to the matters therein provided." The amendment to the charter of San Bernardino County, having been so adopted and approved, is a part of that organic law. The provisions of said section 7½ were contained in that section as adopted in the year 1911 and remain unchanged in the same section as amended in 1914.

Section 9 of article XI of the constitution has not been amended since the adoption of the constitution in 1879. It reads as follows: "The compensation of any county, city, town, or municipal officer shall not be increased after his election or during his term of office; nor shall the term of any such officer be extended beyond the period for which he is elected or appointed." Respondent contends that this provision of section 9 is applicable to officers of county governments operating under freeholders' charters. This proposition is denied by petitioner. This presents the only question in the case.

Said section 7½ of the constitution provides that "it shall be competent, in all charters, framed under the authority given by this section to provide, in addition to any other provisions allowable by this constitution, and the same shall provide, for the following matters: . . . 2. For sheriffs . . . for the election or appointment of said officers, or any of them, for the times at which and the terms for which, said officers shall be elected or appointed, and for their compensation, or for the fixing of such compensation by boards of supervisors, . . . " In framing the charter for San Bernardino County advantage was taken of the authority thus given to fix the salary of the sheriff at a sum named in the charter, instead of leaving the control of that matter to the board of supervisors.

The charter amendment attaching to the office of sheriff a salary of three thousand six hundred dollars per annum is in force as a part of the charter. Therefore, it is operative as applied to the sheriff now in office, unless it plainly appears in the amendment itself, or by virtue of some controlling provision of the constitution, that such operation is intended to be postponed to some subsequent time. No such intention to postpone is contained in the charter amendment, or in said section 7½ of article XI of the constitution. On the contrary, the charter amendment itself affirmatively declares the intention that it shall go into effect and be in force, "and the salary fixed shall be effective" on and after January 8, 1923. And then, not content with the implied repeal of the former salary provision for the sheriff, the amendment affirmatively states that all provisions of said article II in conflict with the amendment "are hereby repealed." The effect of a direct

repeal of the salary clause, standing alone, would be to immediately revive the provisions of the general law (the operation of which is now suspended), which give to the sheriff of San Bernardino County, as a county of the ninth class, a salary of four thousand five hundred dollars per annum. (Pol. Code, secs. 4005c, 4006 and 4238; *Jones* v. *De Shields,* 187 Cal. 331 [202 Pac. 137].)

It is not claimed that there is any other provision of the constitution outside of section 9 of article XI that would interfere with the complete and present effectiveness of the charter amendment now under consideration. It has been held by this court that the constitutional provision authorizing counties to adopt freeholders' charters for purposes of local government "was comprehensive to the end that the counties should have the power to provide a complete system for the election and appointment of their officers and for the fixing of their compensation." (*Gibson* v. *Civil Service Com.,* 27 Cal. App. 396 [150 Pac. 78].) Again, in the same decision, this court said that "plainly, the intent was of the people when they adopted the amendment to give to counties in their charter government complete control of all officers thereof as to their election or appointment and the compensation to be paid to them." In *Puterbaugh* v. *Wadham,* 162 Cal. 611, at page 616 [123 Pac. 804, 806], the supreme court said: "Section 9 of article XI is an inhibition directed to the legislature because it applies not only to attempted increases of salaries but to efforts to extend terms of office. The latter part of the section is unquestionably a limitation upon legislative power and the former from its association should be similarly construed." Consequently, it was there held that the section could have no application to a change in salary due to the passing of a city, not by legislative act, but by increased population, from one class to another—not a legislative act, but an automatic change. While in the present instance the change of salary is not due to any automatic change of conditions, it is due to a constitutionally authorized act of the people of the county, which became effective upon the approval thereof by the legislature. But such approval was not itself an act of legislation. In *Mesmer* v. *Board of Public Service Commrs.,* 23 Cal. App. 578 [138 Pac. 935] this court, relying upon the authority of earlier decisions of the supreme court, held that the legis-

lature does not exercise law-making power when it approves freeholders' charters. It was pointed out that the legislature has no power to mold or change a freeholders' charter when such instrument is before it for consideration, and that the approval is by resolution and not by bill. In *Puterbaugh* v. *Wadham, supra,* the supreme court declared that section 9 of article XI of the constitution "was designed to protect taxpayers from legislative interference with their rights by increasing the compensation paid to their elected officers *without consent of the electorate, . . .* "

Since it appears from the decisions to which I have referred that the adoption and approval of the charter amendment did not include any legislative act by the legislature of the state, or any legislative interference with the control by the electors of the county, of the allowance of compensation to their elected officers, I think it should be held that the right of petitioner to receive compensation at the rate provided in the amended section accrued *immediately* when the amendment became a part of the charter. In coming to this conclusion, I am not unaware of the fact that in *Cameron* v. *City of Richmond,* 42 Cal. App. 262 [183 Pac. 604] it was assumed by the court (there being apparently no contention made to the contrary) that the right of a city operating under the freeholders' charter to increase the compensation of a municipal officer was subject to the provisions of said section 9 of article XI. On that unchallenged assumption the actual question presented for consideration was decided. The attempted increase of salary in that case was by municipal ordinance, adopted by the city council, and not approved by the electors as provided by the charter in the case of an attempt to vary the compensation specified in the charter.

Also, I am of the opinion that that part of section 7½ of article XI, which grants authority by a freeholders' charter to provide for the compensation of the sheriff and of certain other officers, is a special provision granting an express power for a specific purpose, and that by reason of that character it would prevail over a more general provision, adopted at an earlier date, like that contained in section 9 of article XI, which, by its terms, refers to "any county, city, town, or municipal officer," and does not take

into account the formation of a county government by free-holders' charter.

I think that the peremptory writ should issue.

A petition by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 27, 1923.