[Civ. No. 1713.   Second Appellate District.—May 12, 1915.]

## HUGH C. GIBSON, Petitioner, v. THE CIVIL SERVICE COMMISSION OF LOS ANGELES COUNTY et al., Respondents.

Public Officers—Probation Officer—County Officer.—A probation officer is a county officer.

Id.—Power of Removal—Construction of Constitution—Los Angeles Charter.—The provision of section 7½ of article XI of the constitution, as amended in 1911, authorizing counties to adopt freeholders' charters for the purpose of local government and authorizing such charters to provide, among other things, "for the compensation of . . . probation and other officers as may be provided by general law, and for the fixing of such compensation by boards of supervisors," includes authority to provide for the removal of such officers; and the provisions of the charter of Los Angeles so providing supersede the provisions of the general statute, known as the juvenile law, affecting the removal of probation officers, and vests that power in the board of civil service commissioners and takes it from the judge of the juvenile court.

Id.—Construction of Constitution—Rule.—The maxim *expressio unius est exclusio alterius* is applicable as a rule of constitutional construction; but the most important rule to be observed in giving construction to ambiguous or apparently conflicting provisions of a constitution is that the interpretation must not be narrow but broad and that the object to be accomplished by the law is not to be left out of view.

Id.—Filling Vacancy—Power of Supervisors.—In such a case while the judge of the juvenile court, after the adoption of the county charter, would have no authority to require the officer who was holding over after the expiration of the term, because of the failure to appoint a successor, to vacate the office, the board of supervisors would under the charter provisions possess authority to proceed with the appointment of another probation officer without waiting for a formal removal to be made of the officer who was holding over.

APPLICATION for a Writ of Mandate originally made to the District Court of Appeal for the Second Appellate District directed to the Civil Service Commission of the County of Los Angeles to compel it to audit and certify to the demand of petitioner for salary as Chief Probation Officer.

The facts are stated in the opinion of the court.

Fredericks & Hanna, for Petitioner.

A. J. Hill, County Counsel, and Robert B. Murphey, Deputy County Counsel, for Respondents.

JAMES, J.—Proceeding for mandate to compel the civil service commission of the county of Los Angeles to audit and certify to the demand of petitioner on account of salary claimed to be owing to him as chief probation officer of the county of Los Angeles for the month of January, 1915. A demurrer was interposed to the petition after alternative writ issued, and the matter is submitted for decision upon the questions of law so raised.

The facts stated in the petition are as follows: On the fourth day of March, 1912, the judge of the juvenile court of the county of Los Angeles appointed the petitioner as probation officer and petitioner thereafter qualified and assumed the duties of the office, which he continued to fill up to the eighth day of January, 1915. On the last named day a communication, signed by the judge of the juvenile court and approved by the members of the probation committee, was delivered to petitioner, in which communication, after setting forth certain reasons for the action taken, petitioner was advised that he was dismissed from his position. Refusing to accept the dismissal, petitioner thereafter presented his salary demand to the civil service commission for the month of January and requested that the same be allowed, which request was refused.

The question is squarely presented as to whether the matter of the removal of the county probation officers is one within the power of the judge of the juvenile court and probation committee, or whether, by reason of the provisions of the charter of Los Angeles County adopted November 5, 1912, that power has became vested in the board of civil service commissioners. In the year 1911, at the general election, there was adopted an amendment to the constitution of the state which added section 7½ to article XI thereof. By this amendment the counties of the state for the first time were given authority to adopt freeholders' charters for the purposes of local government. The constitutional provision so adopted was comprehensive to the end that the counties should have the power to provide a complete system for

the election and appointment of their officers and for the fixing of their compensation. Power was also given to prescribe the duties and authority of boards of supervisors and other county officers, with the limitation expressed as to that matter that such provisions should be subject to and controlled by the general laws of the state. Examining the provisions of the constitutional amendment, it is found, first, that it is made competent for county charters to provide for boards of supervisors, their terms of office, manner of their election, and for their compensation; also to provide for sheriffs, county clerks, treasurers, recorders, license collectors, tax-collectors, public administrators, coroners, surveyors, district attorneys, assessors and superintendents of school, and for their terms of office, the manner of their selection and for their compensation. Similar provision is found with reference to justices of the peace and judges of inferior courts. Subdivision 4 prescribes that such charters may also provide "for the powers and duties of boards of supervisors and all other county officers, for their *removal* and for the consolidation and segregation of county offices, and for the manner of filling all vacancies occurring therein; provided that the provisions of such charters relating to the powers and duties of boards of supervisors and all other county officers shall be subject to and controlled by general laws." Up to this point in the constitutional provision no specific mention is made of probation officers; but section 6 gives authority to provide in such charters "for the compensation of such fish and game wardens, probation and other officers as may be provided by general law, or for the fixing of such compensation by boards of supervisors." Other provisions in the amendment give authority for charters to provide for additional offices and to make other provisions applicable to county offices created subsequently by the constitution or by general law. Following the adoption of the amendment, the charter of the county of Los Angeles was adopted which contained provisions covering the matter of the election or appointment of all county officers and the method of fixing their compensation. In this charter, wherein a list of appointive county officers is set forth, the probation committee and probation officer are specifically mentioned as being among that number. Among the civil service provisions of that charter are contained provisions for the removal of officers for cause. Such action is

embraced within the powers given to the civil service commission. The general act of the legislature providing for a juvenile court and its officers, as found in statutes of 1909, at page 213, gave to the judge of the juvenile court the authority to appoint the probation officers. This act was amended in 1913 (Stats. 1913, p. 1285), which in general continued the provisions of the act of 1909 touching the matter of the appointment of the probation officers. Petitioner insists that by the adoption of the freeholders' charter the probation officers became subject to the provision of that charter as to their removal and continuance in office, the same as other county officers. That a probation officer is an officer of a county has been clearly decided in the case of *Nicholl* v. *Koster,* 157 Cal. 416, [108 Pac. 302]. In that decision it is declared that the appointment of probation officers is not *necessarily* a matter vested within the control of the judiciary, but that it is competent for the legislature to relieve judges of that duty and provide some other method for the selection of these officers whose duty it is to carry out the purposes of the juvenile law under the supervision of the judge of the juvenile court. We have already suggested that the county charter contains provisions completely covering the matter of the removal and appointment of all county officers, including probation officers. The one question before us is as to whether under the constitutional provisions it is competent for the charter to deal with the office which petitioner alleges that he held during the month of January, 1915. Respondents have contended that an examination of the constitutional amendment necessarily shows that it was not the intent of the people to include the fish and game wardens and probation officers among those officers respecting whom county charters might deal, for the reason that the only clause in which such officers are specifically mentioned is subdivision 6, providing that provisions may be contained in such charters permitting compensation to be fixed for fish and game wardens and probation officers. They argue the application of the maxim *expressio unius est exclusio alterius.* That such a maxim is applicable as a rule of constitutional construction, is affirmed in the cases of *In re Ohm,* 82 Cal. 160, [22 Pac. 927], and *Spier* v. *Baker,* 120 Cal. 370, [41 L. R. A. 196, 52 Pac. 659]. The most important rule, however, to be observed in giving construction to ambiguous or apparently

conflicting provisions of a constitution is that the interpretation must not be narrow, but broad, and that the object to be accomplished by the law is not to be left out of view. (Black's Constitutional Law, secs. 47, 48, 49.)    When the apparent purposes and intent of the constitutional amendment are considered, its context and entire substance, there seems, in our opinion, to be no room for the application of the maxim hereinbefore adverted to.    Plainly, the intent was of the people when they adopted the amendment to give to counties in their charter government complete control of all officers thereof as to their election or appointment and the compensation to be paid to them.    No reason at all is apparent why probation officers (who under the decision of our supreme court are county officers) should be, with the game wardens, alone excepted from the operation of the amendment.    In the decision in the Nicholl-Koster case, the supreme court pointed out that, while the probation officers were in a sense adjuncts or officers of the court, they were nevertheless, in a complete sense of the term, county officers. As we view this matter, the full purpose and intent of the constitutional amendment is preserved and made effective by holding that the charter provisions governing the removal of all officers superseded the direction of the general statute, known as the juvenile law, affecting the removal of probation officers, and under that conclusion the petitioner is entitled to the relief sought.

Without restricting the conclusions which have been expressed in the foregoing as to the main propositions discussed, attention may be called to the fact that under the allegations of the petition herein and the provisions of the law under which the appointment of the probation officer was made, and also the Juvenile Act as subsequently enacted, petitioner's term of office expired two years after March 4, 1912.    It would seem that, while the judge of the juvenile court, after adoption of the county charter, would have no authority to require the officer who was serving because of the failure to appoint a successor to vacate the office, the board of supervisors would under the charter provisions possess authority to proceed with the appointment of another probation officer without waiting for a formal removal to be made of the officer who was holding over.    The term of office is by the statute

fixed at two years, and we are not advised of any charter provision which at all changes it.

As to whether under the constitutional provisions authorizing the framing of county charters the members of the probation committee are properly classified in the charter as county officers, is not decided.

Peremptory writ of mandate will issue as prayed for in the petition.

Conrey, P. J., and Shaw, J., concurred.