[Civ. No. 15765.   First Dist., Div. One.   Feb. 24, 1954.]

A. W. BROWN et al., Appellants, v. JOHN M. FRANCISCO, as County Controller and Auditor, etc., Respondent.

Smith, Wool & Perren and Vernon E. Perren for Appellants.

Howard W. Campen for Respondent.

McMURRAY, J. pro tem.*—This is an appeal from a judgment denying appellants' petition for a writ of mandate.

Appellants, the members of the Santa Clara County Board of Supervisors, sought the writ to compel respondent, controller and auditor of said county, to pay their salaries at the rate of $6,000 a year, as provided by Government Code, section 28106, as amended in 1951, rather than at the rate of $3,600 a year under county ordinances enacted by the board in accordance with section 207 of the Santa Clara County charter.

It is contended by appellants that the above section of the charter is unconstitutional and that the ordinances enacted thereunder are void. Based on this premise it is urged that they are entitled to the salaries provided in section 28106 of the Government Code inasmuch as sections 53070 and 53071 of that code suspend the prohibition against such increases found in article XI, section 5, of the Constitution.

Section 7½ of article XI of the California Constitution provides for "home rule" by counties, and outlines the method whereby a county may frame and adopt a charter for its own government "consistent with and subject to the Constitution . . . and relating to matters authorized by provisions of the Constitution . . . ," and contains the following:

"It shall be competent, in all charters, framed under the authority given by this section to provide, in addition to any other provisions allowable by this Constitution, and the same shall provide, for the following matters:

"1. For boards of supervisors and for . . . their compensation . . .

"2. For sheriffs, county clerks [etc.], . . . and for their compensation, or for the fixing of such compensation by boards of supervisors . . .

"3. For . . . justices of the peace and constables . . . , and for their compensation, or for the fixing of such compensation by boards of supervisors . . ."

On November 7, 1950, the electorate of Santa Clara County voted for and ratified a charter which was approved by the Legislature on June 5, 1951, and became operative on September 4, 1951. Section 207 of that charter, so far as here pertinent, reads: "Salaries of Supervisors shall be based upon the time required for the proper performance of their public duties and shall be fixed by the terms of an ordinance passed by the Board. Such salaries shall not exceed the amount allowable by the applicable provisions of general law as of August, 1950. Subject to the same limitation, salaries may be revised or changed biennially to take effect before new supervisorial terms commence, but no such change shall affect the salary of an incumbent Supervisor during the continuance of his current term of office. . . ." Two ordinances were enacted by the board, one on September 4, 1951, and one on May 15, 1952, each fixing the members' salaries at $3,600 a year (the amount fixed by Gov. Code, § 28106, in effect in August, 1950; the provision of general law referred to in the charter).

It is appellants' position that this portion of section 207 is void since it is inconsonant with the mandate of the Constitution that a charter shall provide "for boards of supervisors and . . . for their compensation . . ." since no compensation is "provided" for the board in the body of the charter. The rule is cited by appellants that where the enactor of a statute has shown an awareness of alternate methods, a court will not presume that the drafter intended an alternative where none was provided in the statute (*People v. Valentine*, 28 Cal.2d 121, 142 [169 P.2d 1]; *Southern Pac. Co. v. McColgan*, 68 Cal.App.2d 48, 54 [156 P.2d 81]; *McCarthy v. Board of Fire Commrs.*, 37 Cal.App. 495, 497 [174 P. 402], and 23 Cal.Jur. p. 754), and urge that this rule is applicable here since subdivision 1 of the pertinent constitutional section sets forth but one method of fixing supervisors' compensation, namely, to "provide" therefor by

charter, whereas subdivisions 2 and 3, in addition to stating that the salaries of the named officers may be "provided" for by charter, contain the alternative that the charter may provide "for the fixing of such compensation by boards of supervisors." It is then contended that the inclusion of the last-quoted language implies that boards of supervisors cannot act in fixing their own compensation.

Respondent contends that the charter and the ordinances passed pursuant thereto are valid, as the Constitution does not require that the charter expressly fix the salaries of supervisors, and that substantial compliance with the Constitution is sufficient to avoid holding the charter unconstitutional. He cites *California Teachers Assn.* v. *Collins,* 1 Cal.2d 202 [34 P.2d 134], where it is said, at page 204: "If that [the requirements of the Constitution] be accomplished in any given case, little more can be asked than that a substantial compliance with the law and the Constitution be had, and that such compliance does no violence to a reasonable construction of the technical requirement of the law," and further that, as stated in *Cornell* v. *Harris,* 15 Cal.App.2d 144, 149 [59 P.2d 570]: "It is a primary rule of construction that constitutional provisions must be liberally construed to give them effect and to achieve the real purpose of their enactment. [Citing cases.] In *Gibson* v. *Civil Service Commission, supra,* [27 Cal.App. 396, 399 (150 P. 78)], it is said:

" 'The most important rule, however, to be observed in giving construction to ambiguous or apparently conflicting provisions of a constitution is that the interpretation must not be narrow, but broad, and that the object to be accomplished by the law is not to be left out of view.' " It is apparent that appellants are asking that a narrow interpretation be given the words "provide for," whereas respondent asks that these words be broadly construed.

Section 7½ of article XI has, for its main purpose, the permitting of home rule to counties upon action by the county electorate. The language here questioned seems clear and it is only by adopting an ingenious and narrow view that an apparent ambiguity appears. "It is fundamental that the province of construction of statutes lies wholly within the domain of ambiguity. The rules of construction are an aid to resolve doubts and not to create them." (*Santa Monica Mountain Park Co.* v. *United States,* 99 F.2d 450, 455.)

As said in *Taylor* v. *Lundblade,* 43 Cal.App.2d 638

[111 P.2d 344], at page 641: "[T]he intention of the legislature will be determined so far as possible from the language of the statute, read as a whole, and if the words of the enactment, given their ordinary and popular signification, are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning." ■ The Honorable Ralph McGee, the trial judge, followed these cases and in his memorandum of opinion stated: ". . . the construction placed upon the constitutional phrase by the petitioners is too narrow. Fairly read, the constitution simply requires the charter to make provision for the compensation of supervisors. This the charter does. The constitution does not require, nor state explicitly that the compensation of the supervisors shall be set forth and fixed in the charter itself, which in substance, is the construction which petitioners would place upon these words." This is a correct statement of the rules of construction here involved.

■ The constitutional language appearing in the pertinent section "or for the fixing of such compensation by boards of supervisors" must be considered in the light of the basic purpose of the section; to establish a framework for county home rule. The framers of this section outlined two methods whereby the officers named might have their compensation established. At the time of the enactment of this section supervisors did not, under general law, have the right to fix the compensation of the officers named and in order to assure that, if desired by the voters, supervisors would have some measure of control over those officers this power was spelled out in subdivisions 2 and 3. The fact that such power was not expressly granted to the boards by subdivision 1, does not mean that they were denied the power to fix their own compensation, but merely that it was the intention of the enactment that, if the electorate so indicated, the boards would have power to control the compensation of the named officers, or that, alternatively, another method of fixing such compensation might be provided in the charter whereby boards would have no control over the compensation of such officers.

■ It is argued that the power in the board of supervisors to fix their own compensation is against public policy, but in view of the limitations here as to maximum amount and the restriction upon increases during incumbency the argument fails. Remembering that the Congress of the United

418

States has always had the same power and has never abused it, makes this point extremely tenuous.

█ Government Code, sections 53070 and 53071, have no application to this case as section 207 of the charter has superseded the general laws (*Mapes* v. *Williams*, 2 Cal.2d 177 [39 P.2d 421]), and the salary limit in that section of the charter is not so expressed as to be subject to the provisions of these Government Code sections.

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.