[Civ. No. 24941.   First Dist., Div. Four.   Jan. 5, 1968.]

THE SUPERIOR COURT OF ALAMEDA COUNTY et al., Petitioners, v. CIVIL SERVICE COMMISSION OF THE COUNTY OF ALAMEDA et al., Respondents.

Edwin A. Heafey, Jr., for Petitioners.

Levy, DeRoy, Geffner & Van Bourg, Victor J. Van Bourg and Stewart Weinberg as Amici Curiae on behalf of Petitioners.

Richard J. Moore, County Counsel, and James E. Jefferis, Assistant County Counsel, for Respondents.

Willard W. Shea and Cyril Viadro as Amici Curiae on behalf of Respondents.

DEVINE, P. J.—The question is whether the probation officer of Alameda County shall be appointed, pursuant to the county's charter, by the judge of the juvenile court on nomination of the juvenile justice commission or by civil service procedure. The superior court, by petition signed by all of its judges, seeks a writ of mandate in its prohibitory form and writ of prohibition to prevent the civil service commission from applying its procedures in the matter of appointment of a probation officer. The former officer, Lorenzo S. Buckley, having retired on October 1, 1967, a new appointment must now be made. No objection is made to the procedural aspects of the petition; in fact, respondent commission equally with the judges wishes this court to decide the substantive issue.

Although much is said by the commission about the preeminence of home rule in respect of county charters, and although the commission states that a prime issue of the case is whether local charters prevail over the general law as to appointment of a probation officer, this is really not an issue. On this subject, petitioners agree with respondents. There is no doubt that the charter could provide for the selection of the probation officer in a manner wholly different from that set forth in the general law, because the probation officer is a county officer (*Nicholl* v. *Koster*, 157 Cal. 416, 423 [108 P. 302]; *Gibson* v. *Civil Service Com.*, 27 Cal.App. 396, 400 [150 P. 78]), and article XI, section 7½, clause 6 of the California Constitution grants ample power to a county to provide for the manner of appointment of such an officer. The question, then, is not what the charter could provide, but what it really does provide.

Section 12 of the charter says that it shall be the duty of the board of supervisors to appoint all county officers other than elective officers, and that all appointments except in cases of appointees to the unclassified civil service shall be

made from the eligible civil service list. (Stats. 1927, ch. 10, p. 2032.) Section 17 designates the appointive county officers, and among them is the probation officer. (Stats. 1927, ch. 10, p. 2034.) But three officers, or classes of officers, are specially referred to as to manner of appointment by section 18. One is the probation officer; the other two classes of officers are the law library trustees and the members of the probation committee. (Stats. 1927, ch. 10, p. 2035.) Under general law the probation committee has been superseded by the juvenile justice commission (Welf. & Inst. Code, § 525), except as to counties with a population of in excess of two million where there exists a probation committee (Welf. & Inst. Code, § 540). Alameda County has a juvenile justice commission.

Section 18 reads: "The Members of the Probation Committee and the Probation Officer, and the Members of the Board of Law Library Trustees shall be appointed in the manner and for the terms now or hereafter provided by general law." (Stats. 1927, ch. 10, p. 2035.)

The general law which provides specifically how a probation officer shall be appointed is Welfare and Institutions Code, section 575. That part which relates to appointments reads: "There shall be in each county the offices of probation officer, assistant probation officer, and deputy probation officer. A probation officer shall be appointed in every county.

"Probation officers in any county shall be nominated by the juvenile justice commission or regional juvenile justice commission of such county in such manner as the judge of the juvenile court in that county shall direct, and shall then be appointed by such judge."

Petitioners propose to appoint the probation officer in exact compliance with section 575, as the general law section method adopted by section 18 of the county charter.

Respondents propose to make the appointment in this way: (a) There will be a promotional examination under the supervision of the staff of the civil service commission. (b) The commission will certify to the juvenile justice commission the names of three persons rating highest on the examination. (c) Upon receipt of the names, the juvenile justice commission will consult with the juvenile court judge for the purpose of selecting the person to be appointed by the judge. (d) The judge will sign the appointment form and notify the civil service commission of the employment. This plan is discussed below, but at this point it may be

said that at oral argument counsel for respondents took the position that the participation of the juvenile justice commission in the procedure is by way of grace or accommodation given by the civil service commission. From respondents' brief it appears that respondents' position as to the judge's participation is that either his legal authority is only that of signing the appointment form and notifying the civil service commission, or that the judge does not take any part in the appointment, the appointment following examination being accomplished by the board of supervisors under section 12 of the charter. By way of accommodation, according to respondents' plan, the juvenile justice commission would, after consultation with the judge, make the selection of one from the persons rating three highest on the examination. In respondents' return, they ask the court either to determine that the ''accommodation plan'' is legal or to declare that the appointing authority is vested in the board of supervisors following a civil service examination. (The term ''accommodation plan'' is our own.)

### Charter Section 18 and Welfare and Institutions Code Section 575 Evaluated With Charter Section 35

The commission's first argument that the office of probation officer is one subject to civil service is that section 35 of the charter so provides, not by specific reference to the probation officer, but by its residual or omnibus paragraph. Section 35 specifies the offices which are of the unclassified civil service: ''(a) All officers elected by the people, and their Chief Deputies. (b) All assistants, deputies and other employees in the office of the District Attorney. (c) All appointive boards and commissions. (d) Members of the County Board of Education. (e) Law Library Trustees. (f) Members of the Civil Service Commission. (g) All persons serving the County without compensation. (h) Not to exceed two confidential employees in the office of the Board of Supervisors.'' The charter then says that ''the classified service shall comprise all positions not specifically included by this Charter in the unclassified service'' (there follow provisions for suspension of competitive examinations within the classified service in cases of exceptional qualifications of a scientific, professional or expert character). (Stats. 1947, ch. 13, pp. 459, 460, as amended by Stats. 1967, Assem. Concurrent Res. No. 32.) The commission argues that the office

of probation officer is one not specifically made unclassified, hence falls within the classified service.

We decide that the charter adopts the general law manner of appointing the probation officer. Our reasons are these:

1. In construing the two sections of the charter, 18 and 35, the principle of statutory interpretation applicable is that specific provisions shall prevail over general ones. (Code Civ. Proc., § 1859.) Section 18 is specific in adopting the statutory manner of appointing the probation officer, naming this official particularly. The part of section 35 upon which the commission bases its case is general and residual in nature. It follows a list of exemptions from classified civil service which are made for some eight classes of officers, many of which are of far less importance than that of probation officer.

If there be conflict between the two sections of the charter, it should not be resolved in favor of section 35 on the basis of the undisputed principle of home rule. Section 18, too, was put into the charter under the principle of home rule. Both sections are of equal dignity in respect of origin. Section 18 is controlling simply because, as the framers of the charter designed it, it is specific. An application of the rule in favor of specificity is found in *Gualco* v. *City of Bakersfield*, 86 Cal.App. 167 [260 P. 308]. There, the general law, the Improvement Act of 1911 relating to streets, required notice for bids to be published for two days only. The city charter provided for five days' notice for contracts for public buildings and works, but did not contain any clause expressly providing for public proceedings for street improvement. But section 161 of the city charter provided: "Whenever any municipal function or affair arises, for which no provision is made by this charter or ordinances, the law of the state applicable thereto shall govern. Any law of the state applicable may be made the law of the city by ordinance." (86 Cal.App. 170; Stats. 1915, p. 1587.) It was held that under the principle that specific statutes take precedence over general ones, section 161, which adopted the statute, must be considered the specific part of the charter.

The case before us is even stronger because in *Gualco,* although the adopted statute was specific as contrasted with the related charter provision on the subject of publication of notice of bids, the adopting section of the charter was stated

in general terms; whereas, in the present case, not only is section 575 of Welfare and Institutions Code, the adopted law, precise in describing the manner of appointment, but also the adopting law, section 18 of the charter, is exact in its designation of the probation officer as one to be appointed under the statute.

█ 2. The adoption of the general law palpably is the result of a careful plan on the part of the framers of the charter to place offices which are particularly related to judicial functions under general law. Thus, under section 18, the law library trustees and the members of the probation committee (juvenile justice commission), as well as the probation officer, are to be appointed according to general law. The general law, section 6301 of the Business and Professions Code, contains a provision for selection of a board of law library trustees composed of judges, lawyers, and the chairman of the board of supervisors, a board well suited to the accommodation of the judiciary and the bar. In 1927, when the charter was adopted, section 4193 of the Political Code provided for substantially the same board, except that there was then no provision for lawyers as members. The board of law library trustees was then, as it is now, properly set apart from the process of civil service selection. The law library trustees are part of the unclassified civil service. (Charter, § 35.)

Also, the general law, section 525 of the Welfare and Institutions Code, provides appropriately for the appointment of the members of the juvenile justice commission by the judge of the juvenile court or by the presiding judge of the juvenile court if there be more than one. In 1927, the provision was substantially the same as it is now. (Stats. 1915, § 18, p. 1240.) In the description of the unclassified civil service, in section 35 of the charter, no reference is made to the juvenile justice commission or to its predecessor, the probation committee. Members of the probation committee are listed among the appointive county officers in section 17 of the charter.

Thus, by the proposition of *noscitur a sociis* it appears that the position of probation officer, together with the named offices of judicial relations, were deliberately set aside from all others and reserved for a plan in which judges would have an important role.

█ 3. The probation officer is well suited for judicial selection. Each of the parties has argued the subject of policy, not with the purpose, we take it, of persuading us to choose in-

dependently the better way for the charter to provide for selecting the probation officer, for this would be alien to the judicial function, but of convincing us that the charter must be interpreted as showing an intention of its makers to use that plan which each of the respective parties contends to be the proper one. Because this phase of the argumentation may seem to bring us close to a choice of preferable policy, we limit our expression to saying that we find nothing compelling in respondents' contention that the probation officer must be chiefly an administrative expert rather than an auxiliary to the court. Respondents tell us that the probation department of Alameda County now employs 700 persons and has an annual budget of $7,000,000; that the probation officer has important and sensitive relations with the board of supervisors, the county administrator and the civil service commission; and that his relationship with the judge of the juvenile court is carried on through the juvenile justice commission or by way of meetings on broad policy matters.

But at the time of the adoption of the charter in 1927, no doubt the administrative functions of the officer were considerably less. If, as time went on, it were deemed proper by officials and the voters of Alameda County to recognize whatever change there may have been in the duties of the probation officer by altering the method of appointment, this could have been done by charter amendment. Besides, we have no doubt that the probation officer, although carrying on his work through many deputies, nevertheless must set the tone for their actions and recommendations in the essential and delicate work of rehabilitation of juvenile and other offenders.

4. Sections 18 and 35 both are parts of the original charter. If section 18, specifically saying that the probation officer is to be selected in the manner provided by general law, is to be offset by the general provisions of section 35, it will have been utterly useless, so far as that officer is concerned, from the beginning. We should not ascribe such folly to the framers of the charter. Respondents have cited to us an opinion of the Attorney General in which the appointment of a probation officer in Sacramento County was considered.[1] The charter of the county had provided that a probation officer should be appointed as provided by general law.[2] Later, there was a

___

[1] 1 Ops. Cal. Atty. Gen. 326.

[2] Stats. 1933, ch. 32, p. 3088. The original Sacramento Charter had no provisions whatever for civil service.

civil service amendment to the charter which divided civil service into classified and unclassified positions, the latter being all those not described as classified.[3] It was the opinion of the Attorney General that the later charter provision superseded the general law. Obviously, this was not a case wherein there were two contemporary provisions, one of them specific, as in Alameda County. The effect of the interpretation of the Sacramento County Charter was not to nullify one section of the original charter by a coetaneous provision of that charter.

### Respondents' Points

Having given our reasons for concluding that the charter adopts general law for the appointment of the probation officer, together with a discussion of respondents' arguments so far as related to the points listed above, we turn to discussion of other arguments advanced by respondents.

1. Respondents point out that there have been amendments in recent years to section 35 and to other sections of the charter having to do with civil service. But none of these amendments has mentioned the probation officer. The amendments simply deal with the procedure for appointment of officers or employees who undeniably are members of the civil service system, or the elimination of some members of the unclassified system.

2. Respondents contend that section 18 of the charter, in saying that the probation officer shall be appointed in the *manner* now or hereafter provided by general law, means only that the general law shall control the filling out of appointment forms and the filing of those forms in an appropriate place. We find it unreasonable that the framers of the charter would go to such pains in designating the probation officer, the trustees of the law library, and the members of the probation committee for appointment in the manner provided by general law if the "manner" were of such limited scope as that proposed by respondents. Moreover, the general law does not purport to specify mere forms of appointment and the place for filing them. The reference in the charter to the general law as it may "hereafter" provide also is incompatible with respondents' exceedingly narrow interpretation. But most of all, the construction contended for by respondents would remove all importance in the matter of

[3]Stats. 1937, ch. 20, p. 2688.

selecting the probation officer from the juvenile justice commission. Under section 575 of the Welfare and Institutions Code, the juvenile justice commission has an important duty to perform. The adoption of the general law by the charter cannot be held so restrictive as to have omitted the function of the juvenile justice commission.

3. Respondents argue that we should affirm their position because the last probation officer, Mr. Buckley, was appointed in the same manner as that now proposed by the commission. His appointment in 1952 was the only one made since the adoption of the charter in 1927. What we have called the ''accommodation plan'' above, seems to have been accepted by the appointing judge. No such proceeding as that now before us was had in any court. Although we recognize the principle in the case cited by respondents, *County of Los Angeles* v. *Superior Court*, 17 Cal.2d 707, 712 [112 P.2d 10], that administrative construction of a statute will be accorded great respect by the courts and will be upheld if not clearly erroneous, we do not find that the solitary incident of 1952 constitutes a settled administrative construction. Probably the appointment made in 1952 did comply, if somewhat loosely, with section 575 in that the probation committee acted in the manner in which the judge of the juvenile court then directed.

## *Welfare and Institutions Code Section 576*

Respondents contend, as an alternate to their arguments as stated above, that if the general law be deemed to have been wholly adopted by section 18 of the charter, the section of the general law which governs is not section 575 but section 576 of the Welfare and Institutions Code, which reads as follows: ''In counties having charters which provide a method of appointment and tenure of office for probation officers, assistant probation officers, deputy probation officers, and the superintendent, matron, and other employees of the juvenile hall, such charter provisions shall control as to such matters, and in counties which have established or hereafter establish merit or civil service systems governing the methods of, appointment and the tenure of office, of probation officers, assistant probation officers, deputy probation officers, and of the superintendents, matrons and other employees of the juvenile hall the provisions of such merit or civil service

systems shall control as to such matters; but in all other counties, such matters shall be controlled exclusively by the provisions of this code.'' The second half of this section, say respondents, turns the appointment of probation officers back to civil service. We do not agree. The charter of Alameda County does not specifically recite the method of appointment of the probation officer. The only specification in the charter as to his appointment is to be found in section 18. We do not find it reasonable to hold that section 18 adopts the general law manner of appointment, and that in doing so it is contemplated that by circuity the manner of appointment shall devolve upon the civil service commission under the omnibus part of section 35 of the charter. Section 576 of the code we deem to be an affirmation of the right of home rule, a right which, as we see it, the county has chosen to exercise, by reference, through the juvenile justice commission and the judge of the juvenile court.

The petition for writ of prohibition is denied. A writ of mandate will issue commanding the Civil Service Commission of the County of Alameda and the members thereof to desist from announcing or holding an examination for the office of probation officer, or accepting any applications for said office, and from taking any action directed toward the appointment of the probation officer; and commanding the Board of Supervisors of the County of Alameda and the members thereof to desist from taking any action toward the appointment of the probation officer of said county.

Rattigan, J., and Christian, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 28, 1968. Traynor, C. J., Tobriner, J., and Burke, J., were of the opinion that the petition should be granted.