TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  | | |
|---|---|---|
| OPINION | : | No. 93-901 |
| of | : | |
| | : | January 13, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

The Deputy Sheriffs' Association of Santa Clara, Inc. and Armando Tiano (hereafter "relators") have requested leave to sue in quo warranto to test the right of Dennis P. Handis (hereafter "defendant") to simultaneously hold the offices of chief probation officer and chief officer of the bureau of correction for the County of Santa Clara.

DISPOSITION

Leave to sue is granted to determine whether defendant may simultaneously hold the offices of chief probation officer and chief officer of the bureau of correction for the County of Santa Clara.

ANALYSIS

This application for leave to sue in quo warranto represents the latest chapter in a five-year history of litigation concerning the County of Santa Clara's establishment of a department of corrections to take over certain responsibilities of the sheriff's department. (See *County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873; *Beck v. County of Santa Clara* (1988) 204 Cal.App.3d 789.) The present quo warranto application centers on whether the same county officer may serve as the county's chief probation officer and its chief officer of the bureau of correction. To answer this question, it must be determined whether the county has properly consolidated its probation department and department of corrections.

Section 803 of the Code of Civil Procedure provides that an action in the nature of quo warranto "may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office. . . ." Here the relators assert that defendant unlawfully holds the office of chief officer of the bureau of correction for the County of Santa Clara.

In determining whether to grant leave to sue upon the complaint of a private party, this office considers the following factors: (1) whether the application has raised a substantial issue of law or fact which a court should decide and (2) whether it would be in the public interest to grant leave to sue. (See, e.g., 76 Ops.Cal.Atty.Gen. 1, 2 (1993); 75 Ops.Cal.Atty.Gen. 112, 113 (1992); 73 Ops.Cal.Atty.Gen. 357, 358 (1990).) We believe that the application herein presents a question of law which should be judicially resolved. "`"[I]t is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or questions of law which should be determined by a court."'" (72 Ops.Cal.Atty.Gen. 63, 69 (1989).)

## A. The Consolidation Resolution

Santa Clara County is a charter county. (See Cal. Const. art. XI, §§ 3, 4, 13.) Section 509 of the county charter, adopted by the voters in 1987, provides in part:

"The Board of Supervisors shall establish a Department of Corrections and appoint a chief officer to operate the county jails for sentenced and unsentenced prisoners and to carry out such other functions of a Department of Corrections as the Board determines. . . .

". . . The Department of Corrections and Chief Officer shall report directly to the Board of Supervisors."[1]

Section 504 of the charter provides:

"The Chief Adult Probation Officer and Juvenile Probation Officers and the Juvenile Justice Commission are appointed and removed as provided by general law. All other officers and employees of these departments are appointed, suspended or removed subject to the provisions of Article VII of this Charter. Nothing in this section shall preclude the Board of Supervisors from exercising the power granted in Section 302(a) of this Charter."[2]

Subdivision (a) of section 302 in turn provides:

"The Board of Supervisors shall have power to:

"(a) Consolidate, segregate, transfer, abolish, or reassign the powers, duties, and functions of any appointed county office, commission, department, or division thereof whenever the respective duties thereof are not inconsistent. The Board shall

_____

[1] Normally, the sheriff is the custodian of the county jail and county jail prisoners. (See Pen. Code, § 4000.) Section 23013 of the Government Code permits any county, whether chartered or not, to establish a Department of Corrections and transfer county functions, personnel, and facilities relating to the care, treatment, punishment and rehabilitation of prisoners to such a department.

[2] Section 270 of the Welfare and Institutions Code provides for the appointment of a juvenile probation officer by the juvenile court judge of the county upon the nomination of the juvenile justice commission. It also provides for removal by that judge for cause or, in his or her discretion, with the approval of the juvenile justice commission. Section 1203.5 of the Penal Code establishes the office of adult probation officer, and further provides that if no separate office of adult probation officer is established, the juvenile probation officer appointed pursuant to section 270 of the Welfare and Institution Code shall be ex-officio adult probation officer.

have similar power as to elected county officers to the extent authorized by general law. If the Board of Supervisors consolidates two or more offices pursuant to general law or this Charter, the department head of the consolidated office need not possess the qualifications required of the occupant of any of the separate offices which are consolidated if the board finds that sufficient personnel possessing the qualifications required are employed in the consolidated office to assure that decisions made by the department head are based upon competent professional advice."

On July 13, 1993, the Santa Clara County Board of Supervisors adopted a resolution consolidating and merging the county's probation department and department of corrections. The resolution provided in part:

"1. <u>Consolidation of Corrections Department under Probation.</u> The county department of corrections, established by resolution of the Board of Supervisors in 1987, is hereby consolidated under the jurisdiction of the Probation Department. The Probation Department shall have jurisdiction of all county functions, personnel and facilities relating to institutional confinement, punishment, care, treatment and rehabilitation of offenders, both presentenced and sentenced, juvenile and adult.

"2. <u>Name</u>. The department of corrections, named in 1987 as the Department of Detention, is hereby renamed as the Bureau of Correction, hereafter referred to as the Bureau.

"3. <u>Head of Correction</u>. There is in the County the position of Chief Officer of the Bureau of Correction, hereafter referred to as the Chief Officer, appointed by the Board of Supervisors. The Board of Supervisors hereby appoints the Chief Probation Officer to serve as Chief Officer.

"4. <u>Duties of Chief Officer</u>.

"(a) The Chief Officer shall be in charge of and responsible for the correctional facilities under the jurisdiction of the Bureau and shall have custody of the presentenced and sentenced prisoners in them in accordance with such rules and regulations as prescribed by state law and by the Board of Supervisors.

"(b) The Chief Officer shall perform those duties with respect to the keeping of prisoners and the administration of the County jail which are assigned to the Sheriff by general law.

"(c) The Chief Officer shall have administrative control over the Bureau and shall be responsible for the required annual itemized estimates of expenditures and revenues for the Bureau. The Chief Officer shall supervise the expenditure of all funds allocated to the Bureau and review expenditures of those funds."

Accordingly, by the above consolidation and merger, the county's chief probation officer became ex-officio the county's chief officer of the bureau of correction. It is this consolidation placing defendant in the two county offices which the relators now challenge.

**B. Government Code Section 24300**

We first address the issue of whether state statutory law controls the consolidation of the two county offices in question. Government Code sections 24300-24307[3] authorize the consolidation of specified county offices. No provision is contained in the legislation for the consolidation of a county's probation department and its department of corrections (or sheriff's department). Section 24300 provides in part:

"By ordinance the board of supervisors may consolidate the duties of certain of the county offices in one or more of these combinations:

"(a) Sheriff and tax collector.

"(b) Auditor and recorder.

"(c) County clerk, auditor, and recorder.

"(d) County clerk and public administrator.

"(e) County clerk and recorder.

"(f) County clerk and auditor.

"(g) Treasurer and tax collector.

"(h) Treasurer and recorder.

"(i) Treasurer and assessor.

"(j) Treasurer and public administrator.

"(k) Public administrator and coroner.

"(*l*) District Attorney and public administrator.

"(m) District attorney and coroner.

"(n) Sheriff and coroner.

"(o) Sheriff and public administrator.

"(p) County agricultural commissioner and county sealer of weights and measures.

"(q) Road commissioner and surveyor. . . ."

May county offices not specified in section 24300 be consolidated?

_____

[3]All references hereafter to the Government Code are by section number only.

In our view, no substantial question is presented as to the authority of a charter county to consolidate offices in addition to those permitted by the Government Code. Several court decisions clearly support such "additional" consolidations. (*Reuter* v. *Board of Supervisors* (1934) 220 Cal. 314, 320-321; *Kelly* v. *Kane* (1939) 34 Cal.App.2d 588, 591; *More* v. *Board of Supervisors* (1916) 31 Cal.App. 388, 392-393.)

Article XI, section 4 of the Constitution states in part:

"County charters shall provide for:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d)  The performance of functions required by statute.

"(e)  The powers and duties of governing bodies and all other county officers, and for consolidation and segregation of county offices, and for the manner of filling all vacancies occurring therein."

The authority to consolidate offices in charter counties is a matter governed by Article XI of the Constitution and is not limited by general law as found in the Government Code.[4]

## C.     Conformity With County Charter

Looking then at the governing law, we find that section 302, subdivision (a) of the Santa Clara County Charter permits the consolidation of county offices or reassignment of the duties and functions of county offices "whenever the duties are not inconsistent."

The charter's prohibition against the consolidation of offices having inconsistent duties appears to reflect the common law rule prohibiting a person from simultaneously holding "incompatible" offices. In 66 Ops.Cal.Atty.Gen. 176, 177-178 (1983), we explained the common law rule as follows:

"`Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other.' (38 Ops.Cal.Atty.Gen. 113 (1961). . . .

"The policy set forth in *People ex rel Chapman v. Rapsey, supra*, 16 Cal.2d 636 comprehends prospective as well as present clashes of duties and loyalties. (See 63 Ops.Cal.Atty.Gen. 623, *supra*.)

---

[4]While *Reuter, Kelly,* and *More* involved a predecessor constitutional provision, we may rely upon them in construing section 4 of article XI. (See Cal Const., art. XI, § 13.) Our opinions in 40 Ops.Cal.Atty.Gen. 138 (1962), 38 Ops.Cal.Atty.Gen. 121 (1961), and 22 Ops.Cal.Atty.Gen. 174 (1953), insofar as they indicate that section 24300 is exclusive concerning the consolidation of county offices, do not purport to rule upon charter county powers. Our opinion in 32 Ops.Cal.Atty.Gen. 161 (1955), insofar as it indicates a contrary result concerning charter counties, is hereby disapproved.

"`. . . Neither is it pertinent to say that the conflict in duties may never arise, it is enough that it may, in the regular operation of the statutory plan. . . .' (3 McQuillin, Municipal Corporations (3d Ed. 1973, §12.67, p. 297.)

"`[O]nly one significant clash of duties and loyalties is required to make . . . offices incompatible. . . .' (37 Ops.Cal.Atty.Gen. 21, 22 (1961).) Furthermore, `[t]he existence of devices to avoid . . . [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed.' (38 Ops.Cal.Atty.Gen. 121, 125 (1961).) Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine. A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible. (*People ex rel. Chapman v. Rapsey, supra,* 16 Cal.2d 636, 644.)"

More specifically, with respect to the issue of inconsistent duties of the particular offices in question, we note that on August 5, 1993, in a court proceeding involving another lawsuit between the parties, the court stated:

"As the judge of a court which effectively deals with both unsentenced and sentenced inmates of the county jail, I am very sensitive to the requirement by the probation office to submit reports to the court on persons to be sentenced or persons who have been sentenced. There are frequently now, much more than used to be, crimes committed within the penal system of the county.

"We have a very recent incident two or three days ago that brings that up. The district attorney has actually formed a jail crimes unit to deal with matters of that sort. It seems to me that when a probation office is in charge of a jail that a conflict of interest may occur when he is required to investigate for the court what actually occurred and what should be done with either the inmate victim or the inmate charged with the crime or with a correctional officer who may have committed the particular crime or with the victim of one of the inmates."

We believe that a substantial issue of law exists concerning whether the duties of the county's probation department and its department of corrections may be considered "inconsistent" under the terms of the county charter. Whether the duties may be performed on a bifurcated basis, whether all statutory duties may be performed by a single individual (see Pen. Code, § 3075), and the precise relationships of the two county departments with the judiciary[5] and the county board of supervisors all require examination.[6]

---

[5]We note that the office of chief probation officer is a county office and that a charter could provide for appointment of such officer by the board of supervisors. (See *Gibson* v. *Civil Service Commission* (1915) 27 Cal.App. 396; 53 Ops.Cal.Atty.Gen. 7 (1970).) This, however, would not militate against the fact that probation officers, in the performance of their normal duties, are adjuncts of the courts.

[6]Whether the consolidation resolution complies with other charter requirements may also necessitate judicial resolution.

**D.      The Public Interest**

In our view, it would be in the public interest to have a judicial resolution concerning the consolidation of the county's probation department and department of corrections. The right of defendant to simultaneously hold the offices of chief probation officer and chief officer of the bureau of correction is dependent upon the validity of the consolidation resolution. Under such circumstances, it would be appropriate for a court to resolve the question of the county charter's proper interpretation. (See 76 Ops.Cal.Atty.Gen. 157, 166-168 (1993).)

Accordingly, leave to sue is hereby granted.

\* \* \* \* \*